

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MARISA BAVAND, | ) | No. 74347-3-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ONEWEST BANK, FSB, a federally | ) | PUBLISHED |
| chartered savings bank; MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | FILED: <u>November 28, 2016</u> |
| SYSTEMS, INC., a Delaware | ) | |
| corporation; and NORTHWEST | ) | |
| TRUSTEE SERVICES, INC., a | ) | |
| Washington corporation, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DOE DEFENDANTS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Cox, J. — Marisa Bavand appeals the order granting summary judgment in favor of OneWest Bank, Mortgage Electronic Registration Systems, Inc. (MERS), and Northwest Trustee Services, Inc. (NWTS). The order denied Bavand's CR 56(f) motion for a continuance and dismissed with prejudice all claims against these defendants.

Bavand fails to show that the trial court abused its discretion in denying her CR 56(f) motion for a continuance. Her challenges to the trial court's consideration of certain evidence supporting the motions for summary judgment and striking Bavand's declaration in opposition are unpersuasive. She fails in her burden to show that any genuine issue of material fact exists for trial. These defendants are entitled to judgment as a matter of law. We affirm.

In August 2007, Bavand obtained a loan from IndyMac Bank. The loan was evidenced by a promissory note dated August 6, 2007 in the principal amount of $240,000. She is the only obligor on the note.

In order to secure payment of the note, Bavand, a married woman as her separate estate, executed a deed of trust that encumbers real property located in Snohomish County. Chicago Title Insurance Company is named as the trustee in this deed of trust. The deed of trust was recorded in the Auditor's Records of Snohomish County on August 16, 2007.

In July 2008, the federal Office of Thrift Supervision closed IndyMac Bank and created IndyMac Federal Bank. The Federal Deposit Insurance Corporation (FDIC) operated IndyMac Federal Bank. The FDIC then sold IndyMac Federal Bank's assets to OneWest.

OneWest took possession of Bavand's original note, which was endorsed in blank by IndyMac Federal Bank, and the original deed of trust in March 2009. OneWest has maintained possession of these loan documents at all times since then.

2

Bavand failed to make the monthly September 2010 payment on her note. She has not made any of the monthly payments on the note since that time. In May 2011, OneWest, through its agent NWTS, sent Bavand a notice of default.

Thereafter, MERS executed and recorded an Assignment of Deed of Trust dated June 7, 2011. It purports to assign to OneWest "all beneficial interest" under Bavand's deed of trust.

In July 2011, OneWest appointed NWTS as successor trustee to Chicago Title Insurance Company, the original trustee under Bavand's deed of trust. Thereafter, NWTS recorded a notice of trustee's sale, setting the sale date for December 2011. NWTS postponed the sale several times and eventually discontinued the sale in May 2013. No trustee's sale has occurred.

Bavand commenced this suit in December 2011. She claimed wrongful foreclosure under the Deeds of Trust Act. She also claimed violations of the Consumer Protection Act (CPA) and the federal Fair Debt Collection Practices Act. She sought to quiet title to the property subject to the deed of trust as well as declaratory and injunctive relief, damages, and attorney fees.

MERS and OneWest removed this action to the United States District Court for the Western District of Washington. The federal trial court granted summary judgment to OneWest, MERS, and NWTS on most of Bavand's claims in March 2013. The federal court remanded only Bavand's CPA claim to state court. The Ninth Circuit Court of Appeals affirmed the federal trial court's decision.[1]

---

[1] Bavand v. OneWest Bank, FSB, 587 F. Appx. 392, 395 (9th Cir. 2014).

3

Thereafter, OneWest, MERS, and NWTS moved for summary judgment in state court. The trial court granted the motions in November 2015, dismissing with prejudice all of Bavand's claims and denying her CR 56(f) motion for a continuance.

Bavand appeals.

## DEEDS OF TRUST ACT

*Continuance*

Bavand argues that the trial court abused its discretion in denying her CR 56(f) motion for continuance of the hearing on the summary judgment motions of OneWest, MERS, and NWTS. We disagree.

Under CR 56(f), a court may order a continuance to allow a party opposing summary judgment to conduct discovery. We review for abuse of discretion a trial court's denial of a CR 56(f) motion for a continuance.[2]

Washington courts may deny a continuance motion "when '(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'"[3]

---

[2] Qwest Corp. v. City of Bellevue, 161 Wn.2d 353, 358, 166 P.3d 667 (2007).

[3] Pitzer v. Union Bank of Cal., 141 Wn.2d 539, 556, 9 P.3d 805 (2000) (internal quotation marks omitted) (quoting Tellevik v. Real Prop. Known as 31641 W. Rutherford St., Located in City of Carnation, Wash., & All Appurtenances & Improvements Thereon, 120 Wn.2d 68, 90, 838 P.2d 111 (1992)).

Here, Bavand sought a continuance of the August 2015 hearing of the summary judgment motions. She claimed to need additional time to conduct specified discovery. The discovery she sought may be summarized as follows:

The identity of and documents related to "each and every *owner*" of her note and deed of trust;
The identity of and documents related to "each and every *holder*" of her note and deed of trust; and
The *originals* of her note and deed of trust.[4]

Whether Bavand offered a "'good reason for the delay in obtaining the desired evidence'" is the first question.[5] We conclude she did not.

The request for a continuance came almost four years after she commenced this action and over two years after the federal court granted summary judgment to the same moving parties in this action. That hearing in federal court resulted in dismissal of all of Bavand's claims except for the CPA claim remanded to state court. Bavand fails to explain satisfactorily why, on this record, she needed a continuance to conduct additional discovery.

Bavand stated in her motion that she had previously requested the discovery identified in her motion, but claimed it was not provided. But no evidence suggests that she moved to compel discovery to obtain what she believed she was entitled to obtain. On this first basis alone, the trial court

---

[4] Clerk's Papers at 154-55 (emphasis added).

[5] Pitzer, 141 Wn.2d at 556 (internal quotation marks omitted) (quoting Tellevik, 120 Wn.2d at 90).

properly denied Bavand's motion for a continuance because she offered no "'good reason for the delay in obtaining the desired evidence.'"[6]

The trial court also properly denied Bavand's motion for a second reason. That is because Bavand failed to establish that a continuance would produce any discovery that would show the existence of a genuine issue of material fact.

First, a note *owner's* identity is immaterial to this litigation, which was commenced to challenge a nonjudicial foreclosure of Bavand's deed of trust due to her delinquent note.[7]

Second, the identity of the note "holder" is material to enforcement of the delinquent note and deed of trust.[8] The record establishes that OneWest has been the "holder" of Bavand's original note since March 2009. There is no evidence in this record to refute this status. All that Bavand offers is speculative and argumentative assertions that unresolved factual issues remain regarding the note holder's identity. Such unsupported assertions are not sufficient to avoid summary judgment.[9] Thus, further discovery on this point would not have shown any genuine issue of material fact.

---

[6] Id.

[7] See Brown v. Dep't of Commerce, 184 Wn.2d 509, 540, 359 P.3d 771 (2015); Trujillo v. Nw. Tr. Servs., Inc., 181 Wn. App. 484, 500-02, 326 P.3d 768 (2014), rev'd on other grounds, 183 Wn.2d 820, 355 P.3d 1100 (2015).

[8] See Brown, 184 Wn.2d at 540; Trujillo, 181 Wn. App. at 500-02.

[9] See Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

Third, Bavand's discovery request to see her original note is not well founded. That is because the legislature has specified that a holder of a promissory note need not produce the original note to prove the right to enforce a deed of trust under these circumstances. Specifically, RCW 61.24.030(7)(a) provides:

> A **declaration** by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust **shall be sufficient proof** [of the status to enforce the note] as required under this subsection.[10]

This record shows that OneWest has complied with this requirement to provide a satisfactory declaration. Bavand fails to argue persuasively why she is entitled to avoid the legislature's statement of what proof is sufficient to establish the right to enforce the note under the circumstances of this case. Her "show me the note" argument is simply untenable.[11]

For these additional reasons, the trial court properly denied Bavand's request for a continuance of the summary judgment hearing.

### Summary Judgment

Bavand argues, in part, that the trial court improperly considered certain evidence in support of the motions for summary judgment. We disagree.

---

[10] (Emphasis added); see also Brown, 184 Wn.2d at 534, 544; Trujillo, 181 Wn. App. at 494.

[11] Petree v. Chase Bank, No. 12-CV-5548-RBL, 2012 WL 6061219, at *2 (W.D. Wash. Dec. 6, 2012) (court order) (and cases cited there).

7

Summary judgment is proper "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[12] "A genuine issue of material fact exists if 'reasonable minds could differ on the facts controlling the outcome of the litigation.'"[13]

Summary judgment is subject to a burden-shifting scheme.[14] The moving party is entitled to summary judgment by submitting affidavits establishing that it is entitled to judgment as a matter of law.[15] The nonmoving party avoids summary judgment by setting forth "'specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue'" of material fact.[16] To accomplish this, the nonmoving party may not rely on argumentative assertions that unresolved factual issues remain or on speculation.[17]

---

[12] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); see also CR 56(c).

[13] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co., 164 Wn.2d at 552), review denied, 181 Wn.2d 1023 (2014).

[14] Ranger Ins. Co., 164 Wn.2d at 552.

[15] Id.

[16] Id. (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)).

[17] Id.

We review de novo a trial court's grant of summary judgment.[18] We may affirm on any basis supported by the record whether or not the argument was made below.[19]

*Summary Judgment Evidence*

Bavand argues that the trial court should not have considered certain evidence in support of the motions for summary judgement. She is wrong.

Under CR 56, the moving party may support its summary judgment motion with affidavits, and the adverse party may file opposing affidavits.[20] CR 56(e) states that parties must make supporting and opposing affidavits "on personal knowledge," must describe facts admissible in evidence, and must affirmatively show "that the affiant is competent to testify to the matters stated therein."

The Uniform Business Records as Evidence Act ("business records act") "makes evidence that would otherwise be hearsay competent testimony."[21] Statements made by a "custodian or other qualified witness" in a declaration based on the declarant's review of business records satisfy CR 56(e) if the

---

[18] Id.

[19] First Bank of Lincoln v. Tuschoff, 193 Wn. App. 413, 422, 375 P.3d 687 (2016).

[20] CR 56(a), (c).

[21] State v. Fleming, 155 Wn. App. 489, 499, 228 P.3d 804 (2010).

declaration satisfies the business records act—RCW 5.45.020.[22] Reviewing courts broadly interpret "custodian" and "other qualified witness."[23]

The statute's purpose "is to permit the admission in evidence of systematically entered records made in the usual course of business without the necessity of identifying, locating[,] and producing as witnesses each individual who made the original entries in the records."[24] No particular mode or record form is required.[25]

Importantly, "where 'the trial court is satisfied that sufficient testimony has been adduced regarding the manner in which certain records have been kept, and that their identity has been properly established in compliance with the [business records] act, no objection on the ground of hearsay can be entertained.'"[26]

Barkley v. GreenPoint Mortgage Funding, Inc.[27] is instructive. In that case, Alex Barkley executed a note and deed of trust in favor of GreenPoint

---

[22] Barkley v. GreenPoint Mortg. Funding, Inc., 190 Wn. App. 58, 67, 358 P.3d 1204 (2015), review denied sub nom., Barkley v. JPMorgan Chase Bank, 184 Wn.2d 1036 (2016).

[23] Id.

[24] City of Seattle v. Heath, 10 Wn. App. 949, 955, 520 P.2d 1392 (1974).

[25] Id.

[26] State v. Iverson, 126 Wn. App. 329, 338, 108 P.3d 799 (2005) (quoting Cantrill v. Am. Mail Line, Ltd., 42 Wn.2d 590, 607-08, 257 P.2d 179 (1953)).

[27] 190 Wn. App. 58, 358 P.3d 1204 (2015).

Mortgage Funding Inc. in 2002.[28] GreenPoint endorsed the note in blank. In 2003, U.S. Bank possessed the note and deed of trust.[29] Chase Bank serviced the loan.[30]

Barkley defaulted on the loan. In 2011, NWTS, acting as U.S. Bank's agent, sent Barkley a notice of default.[31] In 2012, U.S. Bank executed a beneficiary declaration stating it held "the promissory note" evidencing the loan.[32] U.S. Bank also appointed NWTS as successor trustee under the deed of trust.[33] In late 2012, NWTS recorded a notice of trustee's sale and postponed the sale three times before discontinuing it.[34]

Barkley commenced suit against GreenPoint, U.S. Bank, Chase, NWTS, and others. He alleged wrongful foreclosure, Deeds of Trust Act violations, and CPA violations.[35] The trial court granted summary judgment to the defendants.[36]

---

[28] Id. at 62.

[29] Id.

[30] Id.

[31] Id. at 63.

[32] Id.

[33] Id.

[34] Id. at 63-64.

[35] Id. at 64.

[36] Id.

11

On appeal, Barkley argued that the trial court should not have considered two declarations from officers of Chase, the loan servicer, and NWTS, the successor trustee, respectively.[37]

This court concluded that these declarations satisfied CR 56(e) and RCW 5.45.020.[38] The declarants declared under penalty of perjury that:

> (1) they were officers of Chase and NWTS, respectively; (2) they had personal knowledge of their company's practice of maintaining business records; (3) they had personal knowledge from their own review of records related to Barkley's note and deed of trust; and (4) the attached records were true and correct copies of documents made in the ordinary course of business at or near the time of the transaction.[39]

Although Barkley argued that the testimony was conclusory and failed to demonstrate personal knowledge, this court determined that Barkley did not identify any genuine issue of material fact as to the declarants' qualifications, "their statements, or the authenticity of the attached documents."[40]

Here, Bavand makes the same arguments as those rejected in Barkley. Because the challenged evidence satisfies the business records act, it also satisfies CR 56(e).

First, Charles Boyle declared under penalty of perjury that he is Vice President in Default Litigation for OneWest and that his statements are based

---

[37] Id. at 66.

[38] Id. at 67.

[39] Id.

[40] Id. at 67-68.

12

upon his "personal knowledge[] and/or [his] review of OneWest's business records."[41] He also testified that he based his testimony on his review of the relevant business records concerning Bavand.

His testimony establishes that OneWest took possession of Bavand's original promissory note and deed of trust in March 2009. The testimony also establishes that OneWest has maintained possession of these loan documents at all times material to this litigation.

Second, Brian Blake declared under penalty of perjury that he is corporate counsel to MERS. His testimony also establishes that he has "personal knowledge of the ordinary and customary method and manner of the preparation and maintenance of MERS business records" due to his general duties. He also has personal knowledge from his review of records concerning Bavand.

The substance of Blake's declaration explains the relationship between MERS and OneWest. It further explains the authority of certain bank officers to act as agents for MERS in connection with the loan documents. Copies of relevant business records are attached to his declaration.

Lastly, Kevin Flannigan declared under penalty of perjury that he is a senior loan analyst for Ocwen Financial Corporation, which services Bavand's loan. Like the two other documents that Bavand challenges, this declaration fully complies with the requirements of the business records act.

---

[41] Clerk's Papers at 1629.

The substance of Flannigan's testimony establishes that the Assignment of Deed of Trust dated June 7, 2011 purported to assign to OneWest "all beneficial interest" of MERS under Bavand's deed of trust.

All of these documents satisfy the business records act and CR 56(e).

Bavand argues that the business records referred to and relied on in the affidavit and declarations "necessarily include" third party records, which "must be separately authenticated by the third party who compiled" them to satisfy RCW 5.45.020. She further argues that the "testimony must be based on personal knowledge of the third party's record custodian" to satisfy the statute.

To the contrary, courts are "not required to examine the person who actually made a record to admit the record under the business record exception. Rather, testimony by one who has custody of the record as a regular part of his work or who has supervision of its creation will be sufficient to introduce the record."[42]

The trial court properly considered this evidence in this case.

None of the cases that Bavand cites support her arguments challenging the trial court's consideration of the challenged evidence. For example, in State v. Weeks, the supreme court determined that the hospital record in that case was not "competent evidence" because it did not satisfy RCW 5.45.020.[43] Specifically, no evidence by the hospital records custodian or any other qualified

---

[42] Fleming, 155 Wn. App. at 499 (citation omitted).

[43] 70 Wn.2d 951, 953, 425 P.2d 885 (1967).

person suggested that the document in question was a business record, as the statute requires.[44] Contrary to Bavand's assertion, the supreme court did not hold that third party records must be authenticated by the third party who compiled the records in order to satisfy RCW 5.45.020. And the supreme court did not state that testimony must be based on personal knowledge of the third party's record custodian to satisfy RCW 5.45.020.

Bavand further argues that Boyle, Blake, and Flannigan did not provide the trial court with facts that would establish the following:

> (1) how the documents they refer to are maintained, whether in hard copy or electronic; (2) if the records are maintained by electronic means, whether the computer document retrieval equipment used is standard; (3) the original source of the materials maintained; (4) the identity of person who compiled the information contained in the files or computer printouts; (5) when, aside from the conclusory statements that they were made "at or near the time of the happening or event," the records or the entries were made and (6) and how the employer of each declarant relies on these records.[45]

But neither RCW 5.45.020 nor the two cases that Bavand cites to support this argument address these factors. For example, State v. Kane involves the admission of computer generated evidence.[46] Here, admission of computer generated evidence is not at issue. Similarly, State v. Smith does not mention the six factors that Bavand argues are required.[47]

---

[44] Id.

[45] Appellant's Opening Brief at 19.

[46] 23 Wn. App. 107, 111-12, 594 P.2d 1357 (1979).

[47] 16 Wn. App. 425, 432-33, 558 P.2d 265 (1976).

Lastly, Bavand cites a federal district court case involving a declaration from Charles Boyle, one of the declarants in this case, to argue that the criticisms mentioned there apply here. In <u>McDonald v. OneWest Bank, FSB</u>, the court imposed sanctions against OneWest and others to offset costs caused by their discovery violations.[48] In a portion of that opinion, the federal court discussed factual misstatements in Boyle's declaration.[49]

We have carefully compared the affidavit here with the discussion in <u>McDonald</u> and conclude there is no similarity for purposes of our analysis. So that case is not helpful.

In sum, the trial court properly considered the affidavits and declarations. Bavand fails in her burden to show otherwise.

Bavand next argues that the state trial judge erred in striking her declaration in opposition to summary judgment. We disagree.

"'When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'"[50]

---

[48] 929 F. Supp. 2d 1079, 1093 (W.D. Wash. 2013) (court order).

[49] <u>Id.</u> at 1089-91.

[50] <u>Overton v. Consol. Ins. Co.</u>, 145 Wn.2d 417, 430, 38 P.3d 322 (2002) (alteration in original) (quoting <u>Marshall v. AC&S, Inc.</u>, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989)).

Here, the trial judge properly struck portions of Bavand's declaration. They directly contradicted her "'clear answers to unambiguous [deposition] questions.'"[51]

During Bavand's deposition in 2013, OneWest's counsel asked Bavand unambiguous questions about her interrogatory answers. This discovery concerned renters of Bavand's property in this foreclosure. Bavand testified that her husband manages the rental properties. She also testified that she "never had any knowledge about what the rent is," had "no personal knowledge" of the four month rental property vacancy, and had "no personal knowledge" of a rental agreement for specific renters. These are unambiguous answers to the questions at the deposition.

In August 2015, Bavand signed her declaration in opposition to the summary judgment motions that are now before us for review. The declaration explained the alleged injuries and damages she sustained due to the moving parties' actions.

Bavand's testimony in this declaration essentially claims $17,442 in damages. Of this total, $16,442 relates to rents or expenditures in connection with renting the property subject to the deed of trust during the time to which she previously testified at the deposition.

This declaration testimony relating to rentals contradicts her "'clear answers to unambiguous [deposition] questions'" given earlier.[52]

---

[51] Id. (alteration in original) (quoting Marshall, 56 Wn. App. at 185).

[52] Id. at 430 (alteration in original) (quoting Marshall, 56 Wn. App. at 185).

17

Bavand earlier testified that she "never had any knowledge about what the rent is." But her later declaration states that she suffered injuries and damages totaling $16,442 related to rentals. She also testified at the deposition that her husband handled the rentals. Thus, her declaration directly contradicts her prior deposition testimony.

Bavand also testified in her deposition that she had "no personal knowledge" of the four month rental property vacancy. But her later declaration states that she was unable to obtain renters for four months. This also directly contradicts her prior deposition testimony.

The trial court properly struck these portions of the declaration due to the conflicts between Bavand's deposition testimony and her later declaration opposing the summary judgment motions.

Bavand does not argue that either the deposition questions or her answers were ambiguous. Rather, she argues that she did not know the answers to the questions at the time of her deposition. She later spoke with her husband, the manager of the property, to obtain the information. This points to the second problem with her declaration: her testimony contains inadmissible hearsay. This is an additional basis to affirm the trial court's decision to strike the declaration.

Accordingly, the trial judge did not err in striking these portions of Bavand's declaration.

We note that Bavand also claims in her declaration a $1,000 federal statutory penalty as damages. But she has abandoned this claim by not arguing

it in this appeal. In view of her abandonment of this claim, the trial judge's decision to strike this portion of Bavand's declaration is not properly before us for review. Accordingly, we do not further address this damages claim.

We also note that Bavand cannot make a claim for damages under the Deeds of Trust Act in the absence of a completed trustee's sale of her property.[53] There has been no such sale. To the extent that Bavand's declaration purports to support such a claim for violation of the Deeds of Trust Act, it is not proper to consider any part of her declaration for this purpose.

On the other hand, Bavand may bring a CPA claim based on the circumstances of this case.[54] To that extent, her declaration could have potential value but for the deficiencies we have already discussed. We address later in this opinion what value, if any, her declaration has in connection with her CPA claim.

### Standing

NWTS argues that Bavand lacks standing under the Deeds of Trust Act to challenge its appointment as successor trustee. Bavand does not directly address this argument in her briefing. We hold that she does have standing under state law.

---

[53] See Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834, 355 P.3d 1100 (2015) (citing Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 428-30, 334 P.3d 529 (2014)).

[54] See id.

19

To establish standing, Washington law requires that a claimant satisfy a two prong test.[55] First, that party "must show 'a personal injury fairly traceable to the challenged conduct and likely to be redressed by the requested relief.'"[56] Second, the party must show that his or her interest is within the "zone of interests protected by the statute" at issue.[57]

We review de novo whether a party has standing.[58]

While none of the parties in this case discusses it, a prior case of this court impliedly addressed standing to challenge the appointment of a successor trustee. That was the 2013 decision of Bavand v. OneWest.[59]

There, Bavand, sued to challenge another nonjudicial foreclosure to enforce the terms of her delinquent note evidencing a $722,950 loan for a property she owned.[60] Bavand challenged the appointment of a successor trustee under the Deeds of Trust Act and the CPA. She did so on the basis that a proper beneficiary did not appoint the successor trustee.[61] We agreed.[62] We

---

[55] Branson v. Port of Seattle, 152 Wn.2d 862, 875, 101 P.3d 67 (2004).

[56] State v. Johnson, 179 Wn.2d 534, 552, 315 P.3d 1090 (quoting High Tide Seafoods v. State, 106 Wn.2d 695, 702, 725 P.2d 411 (1986)), cert. denied, 135 S. Ct. 139 (2014).

[57] Id.

[58] In re Estate of Becker, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

[59] 176 Wn. App. 475, 309 P.3d 636 (2013).

[60] Id. at 482-83.

[61] Id. at 484.

[62] Id. at 487-90.

20

also held that Bavand could pursue her CPA claims against the bank and MERS.[63] Implicit in these holdings is that she had standing to sue for relief under both of these acts.

We have no difficulty in expressly deciding that, under state law, borrowers have standing under both statutes to challenge the appointment of a successor trustee. We so hold.

Based on a series of federal cases, NWTS argues that Bavand does not have standing. We disagree based on the state law we just discussed.

Additionally, none of the federal cases on which NWTS relies applies Washington's test for standing that we just discussed.[64] We see no reason why standing, a question of state law in this state case, should be controlled by those federal cases. Accordingly, we do not follow them.

---

[63] Id. at 503-09.

[64] Brophy v. JPMorgan Chase Bank, N.A., No. 2:14-CV-0411-TOR, 2015 WL 1439346, at *5 (E.D. Wash. Mar. 27, 2015) (court order) (stating "Whatever claim Plaintiffs have regarding the alleged fraudulent execution of the appointment of successor trustee can only be pursued against Defendant JPMorgan Chase, not Defendant NWTS."); Cagle v. Abacus Mortg., Inc., No. 2:13-CV-02157-RSM, 2014 WL 4402136 at *4-5 (W.D. Wash. Sept. 5, 2014) (court order) (stating that the borrower lacked standing to challenge the assignment of the deed of trust.); Brophy v. JPMorgan Chase Bank Nat'l Ass'n, No. 13-CV-0293-TOR, 2013 WL 4048535 at *3 (E.D. Wash. Aug. 9, 2013) (court order) (stating that the borrower lacked standing to challenge the appointment of a successor trustee.); Brodie v. Nw. Tr. Servs., Inc., No. 12-CV-0469-TOR, 2012 WL 6192723 at *3 (E.D. Wash. Dec. 12, 2012) (court order) (stating that the borrower lacked standing to challenge the appointment of a successor trustee or the assignment of the deed of trust.), aff'd, 579 Fed. Appx. 592 (9th Cir. 2014).

*Good Faith of Successor Trustee*

Bavand claims NWTS violated its duty of good faith under RCW 61.24.030(7)(b) in three ways. First, she argues that the beneficiary declaration provided by OneWest is ambiguous because the date on the document is incomplete. Second, she argues that the declaration may have been signed by someone who was not employed by OneWest when the declaration was provided to NWTS in June 2011. Third, she contends that the declaration implies that she signed only one promissory note but argues that there are two versions of her note. None of these arguments is persuasive.

Bavand relies, in part, on Trujillo v. Northwest Trustee Services, Inc.[65] There, the supreme court addressed the extent to which a successor trustee under a deed of trust may rely on a beneficiary declaration that purports to satisfy the requirements of RCW 61.24.030(7)(a). This statute states one of the requisites to scheduling a trustee's sale.

The supreme court chose not to address the ambiguity of RCW 61.24.030(7)(a) in Trujillo, an ambiguity the court held existed in Brown v. Department of Commerce,[66] a case argued the same day. Instead, the Trujillo court focused on whether the successor trustee violated its duty of good faith under RCW 61.24.030(7)(b). The question was whether the successor trustee had improperly relied on the beneficiary declaration in that case.

---

[65] 183 Wn.2d 820, 355 P.3d 1100 (2015).

[66] 184 Wn.2d 509, 534-35, 359 P.3d 771 (2015).

There, the declaration stated, in relevant part, that the beneficiary "is the actual holder of the promissory note . . . or has requisite authority under RCW 62A.3-301 to enforce said obligation."[67] The court stated that this declaration was ambiguous because the declarant "could be the 'actual holder' 'or' it could be something else."[68] The question, according to the court, was whether reliance on that ambiguous declaration was sufficient to fulfill the duty of good faith under RCW 64.24.030(7)(b).

Trujillo alleged that the successor trustee deferred to that ambiguous declaration to initiate foreclosure.[69] The supreme court held that this allegation was sufficient to claim a violation of the Deeds of Trust Act.[70] Accordingly, there was a genuine issue of material fact whether the successor trustee actually relied on the ambiguous declaration as a basis for issuing the notice of trustee's sale.[71]

Here, Bavand does not and cannot make the same claim that was made in Trujillo. The beneficiary declaration in this case is unambiguous on the status of OneWest. It clearly states that OneWest "is the holder of the promissory note"

---

[67] Trujillo, 183 Wn.2d at 832.

[68] Id. at 833.

[69] Id.

[70] Id. at 834.

[71] Id.

23

of Bavand.[72] Under Brown, this unambiguous declaration is sufficient to fulfill the requirements of RCW 64.24.030(7)(a).[73]

Rather, the ambiguity that Bavand claims is based on the fact that the beneficiary declaration is dated "this 8th day of June 20___."[74] She argues that this incomplete statement of the year creates a genuine issue of material fact. Specifically, she claims it is uncertain whether the declaration was signed when the loan closed, after the foreclosure started, or during the litigation of this case. She fails to point to any evidence in the record to substantiate any of the above alternatives that she argues.

In response, NWTS cites to the record to establish that the declaration was signed on June 8, 2011 and that NWTS received the declaration on June 15, 2011. These two dates predate the issuance of the notice of sale, which is the material date. Moreover, NWTS cites other evidence in the record that establishes that OneWest is the proper beneficiary to provide the required declaration. Accordingly, Bavand fails to show any genuine issue of material fact respecting when OneWest signed the beneficiary declaration.

Bavand next argues that the record shows that the person who signed the beneficiary declaration for OneWest was not then employed by the bank. NWTS does not respond to this argument in its briefing.

---

[72] Clerk's Papers at 1829.

[73] See 184 Wn.2d at 544.

[74] Clerk's Papers at 1829.

Assuming, without deciding, this is true, there is no evidence that Bavand identifies in this record to show that NWTS either knew or should have known that the person signing the declaration may not have been the bank's employee. It is difficult to see how NWTS could breach its duty of good faith without Bavand producing evidence of this necessary factual predicate. We conclude there is no genuine issue of material fact that Bavand has shown for this claim.

Bavand's final "ambiguity" argument is that the beneficiary declaration states that OneWest "is the holder of the promissory note, implying there to be only one note."[75] She further states that "there were two notes endorsed in blank by two different individuals."[76] This argument is without merit.

It is undisputed that Bavand signed one *original* promissory note, not two. Thus, Bavand's statement that "there were two notes" is misleading. Her liability for her delinquent loan obligation arises from one *original* note—the evidence of her debt.

Bavand bases her argument on the fact that this record shows a *copy* of her note stamped "Certified a True Copy" that bears an endorsement in blank by IndyMac Bank Federal Bank, signed by its officer Kimberly Woody.[77] This record does not show when the stamped notation was affixed in relation to when IndyMac Bank Federal Bank executed the endorsement in blank. Nevertheless,

---

[75] Appellant's Opening Brief at 29.

[76] Id.

[77] Clerk's Papers at 430-34.

25

based on this certified copy, Bavand urges that she "can potentially [be] liable to pay sums in excess of" the original promissory note that she signed at closing.[78] She is wrong.

Bavand cannot be liable for any debt other than that evidenced by the one *original* note that she signed. OneWest relies on only that *original* note, endorsed in blank by IndyMac Federal Bank and signed by its officer Sam Lindstrom.[79] The bank does not assert that Bavand is liable based on the *copy* of her note stamped "Certified a True Copy."

There is no genuine issue of material fact as to the obligation that OneWest seeks to enforce by the trustee's sale scheduled by NWTS. That obligation is evidenced only by the *original* promissory note that Bavand signed, nothing else.

In sum, there are no genuine issues of material fact whether either OneWest or NWTS violated the Deeds of Trust Act in any respect.

For these reasons, the trial court properly granted summary judgment to the defendants on all claimed violations of the Deeds of Trust Act.

## CONSUMER PROTECTION ACT

We turn our attention to the only remaining claim Bavand briefs on appeal. She argues that the trial court improperly granted summary judgment on her CPA claim. We disagree.

---

[78] Id. at 396; see also Appellant's Opening Brief at 9.

[79] Id. at 1631.

26

As previously noted in this opinion, Bavand cannot bring a claim for damages under the Deeds of Trust Act without a completed trustee's sale of her property.[80] There has been no such sale. So, her CPA claim based on wrongful conduct during a nonjudicial foreclosure process remains for us to review.[81]

The CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."[82] To succeed on a CPA claim, a claimant must establish "(1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered."[83] A claimant must establish all five elements to prevail.[84]

Whether a particular action constitutes a CPA violation is reviewable as a question of law.[85]

## MERS

Bavand first argues that MERS committed an unfair or deceptive act by executing and recording the Assignment of Deed of Trust dated June 7, 2011.

---

[80] Trujillo, 183 Wn.2d at 834.

[81] Id.

[82] RCW 19.86.020.

[83] Trujillo, 183 Wn.2d at 834-35.

[84] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

[85] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

That recorded document purports to assign to OneWest the "beneficial interest" of MERS under Bavand's deed of trust. We hold that this recorded assignment that characterizes MERS as having a beneficial interest in the Bavand deed of trust is presumptively deceptive.

In Bain v. Metropolitan Mortgage Group, Inc., the supreme court stated that "only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property."[86] The court held that MERS "is an ineligible 'beneficiary'" within the Deeds of Trust Act "if it never held the promissory note or other debt instrument secured by the deed of trust."[87] The court determined that MERS was not a "holder" under the Uniform Commercial Code definition.[88] Thus, the court concluded that "characterizing MERS as the beneficiary [in the deed of trust] has the capacity to deceive."[89] Accordingly, the court held that the first element of the CPA claim was presumptively met.

Here, the recorded assignment of the deed of trust, not the deed of trust itself, purports to assign to OneWest "all beneficial interest" of MERS under Bavand's deed of trust. MERS is an ineligible beneficiary under the law. This recorded document gives constructive notice of its contents. Characterizing

---

[86] 175 Wn.2d 83, 89, 285 P.3d 34 (2012).

[87] Id. at 110 (internal quotation marks omitted).

[88] Id. at 104.

[89] Id. at 117.

MERS as having a beneficial interest in the Bavand deed of trust in this assignment has the capacity to deceive. Thus, it is presumptively deceptive under Bain.

We reach these conclusions on the same basis as the supreme court in Bain. We are bound by that decision and see no rational basis to avoid applying the rule of that case to this recorded assignment of deed of trust.

MERS fails to show that this recorded assignment of deed of trust is not presumptively deceptive. It argues that it did not commit an unfair or deceptive act because it executed the assignment as OneWest's agent. It relies on Bain to argue "that lenders and assigns are entitled to name MERS as their agent."

Agency is immaterial for this purpose. MERS executed the document that is presumptively deceptive. The fact that it may have done so as OneWest's agent does not relieve MERS of responsibility of making the representation and recording the document.

MERS also argues that this assignment did not constitute a deceptive act because it did not "mislead or misrepresent something of material importance." The Bain court held that a similar characterization in a deed of trust had the capacity to deceive and was presumptively deceptive. MERS does not satisfactorily explain why the alleged lack of "material importance" of this characterization distinguishes it from that in Bain.

But our conclusion that this characterization is presumptively deceptive does not end our inquiry. A CPA claimant must also establish that he or she

29

would not have suffered an injury but for the other party's unfair or deceptive practice.[90]

Here, the question is whether Bavand would not have suffered an injury but for the presumptively deceptive act of MERS's characterization in the recorded assignment of deed of trust. We conclude that there is no genuine issue of material fact showing causation.

In Bain, the supreme court stated in its discussion regarding MERS that the Deeds of Trust Act "contemplates that the security instrument will follow the note, not the other way around."[91] This statement is consistent with well settled law.

Commentators have stated that the "transfer of the [note] alone will carry the [deed of trust] along with it."[92] Similarly, other commentators have elaborated, stating:

> [B]etween the parties to a transfer[,] the assignment or negotiation of the note itself is all that must be done. It is unnecessary to have any separate document purporting to transfer or assign the mortgage on the real estate, for it will follow the obligation automatically.[93]

---

[90] Indoor Billboard/Washington, Inc., 162 Wn.2d at 84.

[91] Bain, 175 Wn.2d at 104.

[92] 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 18.18, at 334 (2d ed. 2004).

[93] GRANT S. NELSON & DALE A. WHITMAN, PRACTITIONER TREATISE SERIES: REAL ESTATE FINANCE LAW, § 5.28, at 429 (4th ed. 2002).

This record shows that OneWest has had possession of the original Bavand note, endorsed in blank, at all times material to this matter. By operation of law, Bavand's deed of trust followed the negotiation of that note now held by OneWest. Accordingly, OneWest had the ability to enforce the deed of trust due to its possession of the note.

Thus, MERS's characterization in the assignment of deed of trust did not cause any injury that Bavand has identified. OneWest's authority to enforce the note and deed of trust arose by operation of law due to the bank's status as holder of the delinquent note. The purported assignment of a nonexistent beneficial interest in Bavand's deed of trust is immaterial. Therefore, Bavand fails to satisfy the "but for" test to show causation.[94]

Bavand's failure to show any genuine issue of material fact for this necessary element of causation makes any factual disputes over the other necessary elements to establish a CPA claim against MERS immaterial for summary judgment purposes.[95] That is because those facts cannot affect the outcome.

MERS is entitled to judgment as a matter of law. The trial court properly dismissed this CPA claim against MERS.

---

[94] Indoor Billboard/Washington, Inc., 162 Wn.2d at 84.

[95] Id. at 74.

31

*OneWest Bank*

Bavand next argues that the creation of "two separate versions of [her] Note with endorsements from two different individuals that could be separately negotiated is also a deceptive act and practice."[96] We hold that Bavand fails in her burden to show necessary elements of this CPA claim against the bank.

We previously discussed the factual underpinnings of this argument. Bavand claims she is potentially liable to pay sums in excess of the original promissory note based on a certified *copy* of her promissory note. This is so, notwithstanding that OneWest seeks to enforce the obligations of her *original* note—which is the evidence of her debt, not any copy.

First, in a private action, a claimant can establish the public interest element of a CPA claim by "showing a likelihood that other plaintiffs have been or will be injured in the same fashion."[97] Here, Bavand utterly fails to show that the facts underlying her "two notes" theory have been replicated elsewhere. Thus, there is no showing that others have been or will be injured in the same fashion. Bavand fails to show a public interest.

Second, Bavand contends that OneWest is not the actual holder of her promissory note. Thus, she argues that OneWest committed an unfair and deceptive act by appointing, without authority, a successor trustee.

---

[96] Appellant's Opening Brief at 33.

[97] Trujillo, 183 Wn.2d at 835.

There is no legal basis for this argument in view of controlling case law. The "holder" of a promissory note is the person with possession of it.[98] The holder of the note—the evidence of the debt—has the right to enforce it.[99] Consistent with these principles, the holder of a note has the right to appoint a successor trustee under the Deeds of Trust Act.

The undisputed facts in this record show that OneWest has had possession of Bavand's original note since March 2009. Critically, it had possession of the original note on the date it appointed NWTS as the successor trustee in this case. The appointment was neither unfair nor deceptive.

Third, a question remains whether there are any genuine issues of material fact as to injuries to Bavand's business or property.

"Compensable injuries under the CPA are limited to 'injury to [the] plaintiff in his or her business or property.'"[100] In Trujillo, the supreme court recently discussed what injuries are within the scope of the CPA under these circumstances. In that case, the court stated:

> While emotional distress, embarrassment, and inconvenience are not compensable injuries under the CPA, Trujillo does not have to lose her property completely to prove injury. Trujillo can satisfy the CPA's injury requirement with proof that her property interest or money is diminished as a result of NWTS's unlawful conduct, even if the expenses incurred by the statutory violation are minimal. Trujillo's investigation expenses and other

---

[98] RCW 62A.1-201(21).

[99] RCW 62A.3-301.

[100] Frias, 181 Wn.2d at 430 (alteration in original) (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

costs associated with dispelling the uncertainty about who owns the note that NWTS's allegedly deceptive conduct created are therefore sufficient to constitute an injury under the CPA.[101]

We already discussed the content in Bavand's declaration and why the trial court properly struck that declaration for purposes of Bavand's claim for violation of the Deeds of Trust Act. Whether she provided evidence within the scope of the CPA is now at issue.

Here, Bavand asserts that she incurred expenses to determine the "owner" of her note. This appears to be based on the statement by the supreme court in Trujillo that investigative expenses associated with dispelling uncertainty "about who *owns* the note" are compensable.[102]

This statement is another example of the confusion that commentators have observed regarding the failure of courts to distinguish between holding a note and owning a note.[103] This statement is also at odds with the supreme court's more recent analysis and conclusion in Brown.

In Brown, the supreme court concluded that the status of "holder" is dispositive for purposes of enforcing a promissory note.[104] The status of "owner" is not.

---

[101] Trujillo, 183 Wn.2d at 837 (citations omitted) (first citing Frias, 181 Wn.2d at 430-31; then citing Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 57, 204 P.3d 885 (2009)).

[102] Trujillo, 183 Wn.2d at 837 (emphasis added).

[103] See Dale A. Whitman & Drew Milner, Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure without Entitlement to Enforce the Note, 66 Ark. L. Rev. 21, 26 (2013).

[104] Brown, 184 Wn.2d at 536-40; see also Trujillo, 181 Wn. App. at 497-502.

Based on our reading of <u>Brown</u> and other relevant authority, we conclude that expenses incurred to determine the "owner" of a promissory note under the circumstances of this case are not compensable under the CPA. Accordingly, this expense does not create any genuine issue of material fact as to Bavand's alleged injury under the CPA.

Bavand also claims to have experienced emotional distress in dealing with the potential loss of her property. But these injuries are personal to Bavand and are not compensable because "[c]ompensable injuries under the CPA are limited to 'injury to [the] plaintiff in his or her business or property.'"[105]

Overall, Bavand's failure to establish the existence of any genuine issues of material fact for these necessary elements of a CPA claim make all other factual disputes for the remaining elements immaterial for summary judgment purposes.[106] OneWest is entitled to judgment as a matter of law and dismissal of the CPA claim.

## NWTS

Bavand follows the claim against OneWest with one against NWTS. She specifically argues that this successor trustee violated its duty of good faith and fair dealing by failing to comply with trustee sale requirements and failing to act

---

[105] <u>Frias</u>, 181 Wn.2d at 430 (some alteration in original) (quoting <u>Hangman Ridge Training Stables, Inc.</u>, 105 Wn.2d at 780).

[106] <u>Indoor Billboard/Washington, Inc.</u>, 162 Wn.2d at 74.

impartially. Accordingly, Bavand argues that NWTS's actions constitute unfair or deceptive acts.

We previously discussed in this opinion why there is no merit to Bavand's claim that NWTS breached its duty of good faith under the Deeds of Trust Act. Bavand expands on that claim here by making additional assertions. None has merit.

She argues that there were serious doubts whether OneWest is the actual holder of her original note. As previously explained, there is no such doubt based on the evidence in this record. There is no genuine issue of material fact of OneWest's status as holder of the note.

Bavand also argues that NWTS was not lawfully appointed. Again, the record and the law show otherwise. This does not create a genuine issue of material fact for trial.

Lastly, Bavand argues that NWTS breached its "fiduciary" good faith duty by issuing the notice of default and the notice of foreclosure that "misrepresent[ed] the ownership" of Bavand's note and deed of trust.

There simply is no authority for the assertion that a successor trustee under a deed of trust has a "fiduciary duty of good faith." Rather, RCW 61.24.010(3) states that "[t]he trustee or successor trustee shall have *no fiduciary duty* or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust."[107] Bavand's reference to a "fiduciary duty" is without merit as a matter of law.

---

[107] (Emphasis added.)

More importantly, ownership of a note is irrelevant to enforcement of the note.[108] Issuance of the notice of default was properly based on proof that OneWest is the holder of the delinquent note.

In sum, there is no genuine issue of material fact regarding NWTS's good faith duty. It is entitled to judgment as a matter of law and dismissal of the CPA claim.

We affirm the summary judgment order dismissing with prejudice all claims of Bavand and denying her CR 56(f) motion for a continuance.

_Cox, J._

WE CONCUR:

_____      _____

---

[108] Brown, 184 Wn.2d at 536-40; Trujillo, 181 Wn. App. at 499-502.