FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 APR 30 AM 9: 13



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| KRISTIN BAIN,<br><br>          Appellant,<br><br>v.<br><br>METROPOLITAN MORTGAGE<br>GROUP, INDYMAC BANK, FSB;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS;<br>REGIONAL TRUSTEE SERVICES;<br>LENDER PROCESSING SERVICES;<br>FIDELITY NATIONAL TITLE, and<br>Doe Defendants 1 through 20,<br>Inclusive,<br>          Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 75946-9-I<br><br><br><br><br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: April 30, 2018 |

VERELLEN, J. — Kristen Bain appeals the summary judgment orders dismissing her claims against Mortgage Electronic Registration Systems (MERS), Lender Processing Services (LPS) and Deutsche Bank National Trust Company for violations of Washington's Consumer Protection Act (CPA).[1] Because Bain presented no evidence that the actions of MERS caused any injury to her property and because she waived any challenge as to LPS and Deutsche Bank, we affirm.

---

[1] Ch. 19.86 RCW.

## FACTS

In March 2007, Bain borrowed $193,000 from IndyMac Bank, FSB in order to buy a condominium in Tukwila, Washington. The loan was secured by a deed of trust identifying the lender as IndyMac, the trustee as Stewart Title Guarantee Company, and the beneficiary, "acting solely as a nominee for Lender and Lender's assigns," as MERS. The loan documents provided that Bain's monthly loan payment would be $1,720.76, to be paid to IndyMac.

In June 2007, IndyMac sold Bain's loan to a securitized trust known as the Home Equity Mortgage Loan Asset-Backed Trust Series INABS 2007-B. Deutsche Bank serves as trustee and is the physical custodian of Bain's note.[2] Deutsche Bank appointed IndyMac as the servicer of the loans owned by the trust.

In May 2008, Bain lost her job and fell behind on her loan payments.[3] On August 26, 2008, Bain received a notice of default. The notice informed Bain that failure to cure the default within 30 days could result in a trustee's sale of her home.

Both IndyMac and MERS used LPS, a provider of mortgage processing services, to assist with loan transactions.[4] On September 3, 2008, Bethany Hood,

---

[2] Deutsche Bank had continuous physical control over the original note and deed of trust until April 3, 2013, when it provided them to OneWest Bank, FSB, who was Bain's loan servicer at the time, upon request from OneWest.

[3] Aside from one partial monthly payment, Bain has not made any loan payments since that time.

[4] "Lender Processing Service, Inc., which processed paperwork relating to Bain's foreclosure, seems to function as a middleman between loan servicers, MERS, and law firms that execute foreclosures." Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 107 n.13, 285 P.3d 34 (2012).

an employee of LPS acting in her capacity as a vice president of MERS, executed an assignment of the deed of trust which purported to assign to IndyMac "all beneficial interest" under the deed of trust.[5] However, several days earlier, on August 26, 2008, Christina Allen, an employee of LPS acting in her capacity as assistant vice president of IndyMac, "the present beneficiary," appointed Regional Trustee Services (RTS) as the successor trustee.[6] Both the assignment and the appointment were recorded on September 9, 2009.

On September 25, 2008, RTS recorded a notice of trustee's sale, scheduling the sale of Bain's home for December 26, 2008.[7]

Bain sued MERS, LPS, and Deutsche Bank, in addition to several other defendants.[8] The complaint alleged that the defendants "assisted in the preparation and creation of false and misleading documentation . . . regarding the standing of themselves or others to initiate and maintain a foreclosure sale" and that Bain was "damaged by the initiation of a foreclosure by an entity who was not the holder of her Promissory Note in that she has been unable to negotiate a resolution regarding the default of her loan because she has not known the identity of the Note holder."[9] As to MERS and Deutsche Bank, Bain alleged claims for

---

[5] Clerk's Papers (CP) at 32.

[6] CP at 35.

[7] The trustee's sale was stayed when Bain filed suit, and never took place. Deutsche Bank, as trustee of the trust, ultimately initiated a judicial foreclosure action and obtained a judgment in 2013.

[8] Bain's various claims against Metropolitan Mortgage, IndyMac, RTS, and OneWest Bank, FSB are not at issue in this appeal.

[9] CP at 3016.

intentional infliction of emotional distress, breach of fiduciary duty, and violation of the CPA.[10] As to LPS, Bain alleged only a claim for intentional infliction of emotional distress.[11]

The defendants removed the case to federal court. LPS moved for summary judgment. In her response, Bain for the first time asserted a CPA claim as to LPS. On March 11, 2010, the federal court granted LPS's motion for summary judgment dismissal of the intentional infliction of emotional distress claim. The federal court noted that Bain's CPA was improperly pleaded because she did not allege it in her complaint.[12] Bain filed a motion for relief from judgment or, in the alternative, a motion for reconsideration. The federal court denied the motion. However, Bain did not otherwise appeal the order granting summary judgment.

MERS and Deutsche Bank also moved for summary judgment. On March 15, 2011, the federal court granted summary judgment dismissal of the CPA claim against Deutsche Bank and the intentional infliction of emotional distress and

---

[10] Bain also alleged that Deutsche Bank violated the Truth in Lending Act, a claim that is not at issue in this appeal.

[11] Bain's original complaint named Fidelity National Title as a defendant, but Bain moved to substitute LPS after it was spun off from Fidelity as a separate corporate identity.

[12] The federal court concluded that even if Bain had properly pleaded the CPA claim, it would not survive summary judgment because LPS's practice of giving its employees titles so that they could execute documents on behalf of MERS and IndyMac was not deceptive because "[t]here is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions." CP at 1049.

breach of fiduciary duty claims against both defendants. Bain did not appeal the order granting summary judgment.

The federal court stayed the CPA claim against MERS and certified three questions of state law to the Washington Supreme Court: (1) whether MERS was a lawful beneficiary as defined by RCW 61.24.005(2) if it has never held the promissory note secured by the deed of trust; (2) the legal effect of MERS acting as such a beneficiary; and (3) whether a homeowner possesses a cause of action under the CPA if MERS acts as such a beneficiary.

The Washington Supreme Court addressed these questions in Bain v. Metropolitan Mortgage Group, Inc. (Bain I).[13] The court concluded that only the actual holder of a promissory note is a "beneficiary" with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property and that MERS was never a beneficiary because it never held Bain's note.[14] However, the court held that "the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury" under the CPA, and a claimant must show a separate injury resulting from MERS's involvement.[15]

After the court issued its opinion in Bain I, the federal court remanded Bain's lawsuit to superior court. On August 30, 2013, the superior court granted summary judgment dismissal of the CPA claim against MERS.

---

[13] 175 Wn.2d 83, 90, 285 P.3d 34 (2012).

[14] Id. at 98-110.

[15] Id. at 119-20.

5

DECISION

We review an order granting summary judgment de novo.[16] Summary judgment is appropriate when, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[17]

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[18] To prevail on a CPA claim, a plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury.[19] "[T]he injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'"[20] The causal link must demonstrate that the alleged injury would not have occurred "but for" the

---

[16] Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 63-64, 1 P.3d 1167 (2000).

[17] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

[18] RCW 19.86.020.

[19] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[20] Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 57, 204 P.3d 885 (2009) (quoting Mason v. Mortgage Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990)).

defendant's unlawful acts.[21] We review whether a particular action constitutes a CPA violation as a question of law.[22]

Bain first challenges the summary judgment dismissal of her CPA claim against MERS. Characterizing MERS as the beneficiary on the deed of trust is presumptively deceptive.[23] But to establish a violation of the CPA, Bain must also show that she would not have suffered injury absent MERS' allegedly deceptive practices.

Bain asserts that she was injured by MERS' actions because "[h]er foreclosure happened faster than it would otherwise have happened because of the robo-signing and expediting of the foreclosure process."[24] But even assuming this premise to be true, that MERS' involvement accelerated the pace of foreclosure proceedings, Bain received the full amount of notice required by the statute.[25] Moreover, Bain fails to put forth facts of any injury related to the speed of the foreclosure proceedings. Bain stated in her deposition that, after she lost her job, she attempted to contact IndyMac to discuss a payment plan, but that

---

[21] Schnall v. AT & T Wireless Servs., Inc., 171 Wn.2d 260, 278, 259 P.3d 129 (2011) (quoting Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 82, 170 P.3d 10 (2007)).

[22] Bavand v. OneWest Bank, 196 Wn. App. 813, 840, 385 P.3d 233 (2016).

[23] Bain, 175 Wn.2d at 117; see also Bavand,196 Wn. App. at 841 (characterizing MERS as the beneficiary in a recorded assignment is presumptively deceptive).

[24] Appellant's Br. at 29.

[25] Under RCW 61.24.030(8), the trustee must transmit written notice of default to the grantor by mail and by posting or serving the notice at least 30 days before notice of sale is recorded. The trustee must record the notice of sale at least 90 days before the foreclosure sale. RCW 61.24.040(1)(a).

IndyMac refused to offer her one, and she did not contact them again. Bain does not establish that, but for MERS' involvement, she would have had sufficient time to cure her default.

Bain additionally claims that she was harmed "by not knowing the true identity of her loan owner (allegedly Deutsche) because she could not pursue claims against it relating to loan origination."[26] But the sale of Bain's loan to the trust was not attributable to MERS. Moreover, this claim is inconsistent with the record. In her deposition, Bain repeatedly acknowledged that she knew that IndyMac was the entity to whom she was required to make loan payments. And Bain knew that IndyMac had authority to modify her loan terms. Bain stated that she contacted IndyMac to modify her loan and that IndyMac offered to allow her to refinance, which Bain did not want to do.

Finally, Bain claims that she "made clear at her deposition that she had damages related to retaining an attorney to stop the foreclosure sale."[27] But "[c]onsulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim. Although the latter is insufficient to show injury to business or property, the former is not."[28] Bain stated in her deposition that she retained an attorney in order to see if they could work out a deal and then get the readjusted, not to dispel any uncertainty

---

[26] Appellant's Br. at 29-30.

[27] Id. at 44.

[28] Panag, 166 Wn.2d at 62 (citations omitted).

about the identity of the note holder.[29] And Bain admitted that she had no question that she owed IndyMac the amount that IndyMac said she did.

Bain thus fails to establish the existence of any genuine issue of material fact as to any injury caused by MERS' conduct. The superior court properly dismissed Bain's CPA claim against MERS.

Bain also appeals the dismissal of her CPA claims against LPS and Deutsche Bank. But, as the federal court noted, Bain never pleaded a CPA claim against LPS. In any event, as to both LPS and Deutsche Bank, Bain fails to establish, or even assert, that she is entitled to review of the federal court's orders here.[30]

Respondent LPS requests attorney fees and costs pursuant to RAP 18.9. RAP 18.9(a) permits this court to award a party attorney fees when the opposing party files a frivolous appeal.[31] "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon

---

[29] Bain asserts that this case is similar to Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 320, 308 P.3d 716 (2013), in which the plaintiff alleged as injuries "the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions" and "the necessity for investigation and consulting with professionals to address [the] wrongful foreclosure and collection practices and violation of RCW 61.24, et seq." Walker is inapposite because it involved a dismissal pursuant to CR 12(c) and, accordingly, considered hypothetical facts.

[30] See, e.g., Porter v. Williams, 436 F.3d 917 (8th Cir. 2006) (when a federal district court grants summary judgment on certain claims and remands the remaining claims to a state court, the federal district court's partial summary judgment becomes final as to the claims on which the federal district court granted summary judgment and the federal district court's resolution of those claims is appealable to the federal circuit court).

[31] Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004).

which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal."[32] As to LPS, the appeal is frivolous because Bain waived her challenge to the summary judgment order. Accordingly, LPS may recover its attorney fees and costs on appeal, subject to compliance with RAP 18.1(d).

Affirmed.

WE CONCUR:

Cox, J.

---

[32] <u>Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.</u>, 170 Wn.2d 577, 580, 245 P.3d 764 (2010).