# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PAUL AND GLORIA MALLOY, husband and wife,

        Appellants,

v.

QUALITY LOAN SERVICE OF WASHINGTON, a Washington corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; GREEN TREE SERVICING LLC, a Delaware corporation; FEDERAL NATIONAL MORTGAGE ASSOC.; a Washington D.C. corporation; BANK OF AMERICA, NA, a North Carolina corporation; and JOHN DOES 1-20,

        Respondents.

No. 75136-1-I

(Consolidated with No. 76331-8-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 11, 2017

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED
2017 DEC 11 PH 1:31

LEACH, J. — Paul and Gloria Malloy lost their property in a nonjudicial foreclosure. They then sued their lender and other entities for alleged violations of the Consumer Protection Act (CPA)[1] and the deeds of trust act (DTA).[2] The court dismissed the claims against respondent Bank of America NA (B of A) by stipulated order, granted summary judgment dismissing the claims against

---

[1] Ch. 19.86 RCW.
[2] Ch. 61.24 RCW.

Quality Loan Service of Washington, and dismissed all claims against the remaining defendants under CR 12(b)(6). The Malloys appeal all the decisions except the stipulated dismissal. We affirm.

## BACKGROUND

In March 2006, the Malloys borrowed $325,000 from Quicken Loans Inc. and signed a note and deed of trust (DOT). The DOT named Orange Coast Title Co. as trustee and Mortgage Electronic Registration Systems Inc. (MERS) as the beneficiary. The DOT recited that MERS was "acting solely as a nominee for Lender and Lender's successors and assigns."

In June 2011, MERS recorded an "Assignment of Deed of Trust," assigning its interest in the DOT to BAC Home Loans Servicing LP.

In January 2013, B of A, successor-in-interest by merger to BAC, assigned its interest in the note and DOT to Green Tree Servicing LLC. In June 2013, Green Tree recorded an "Appointment of Successor Trustee," appointing Quality as the new trustee.

In September 2013, Quality mailed the Malloys a "Notice of Default," stating that they had made no loan payments since November 2012. Before doing this, Green Tree filed a "Declaration of Beneficiary," stating it was "the actual holder" of the promissory note.

In February 2015, Quality recorded a "Notice of Trustee's Sale." It scheduled a sale for June 12, 2015. Later, Quality discontinued the sale by recording a "Notice of Discontinuance of Trustee's Sale."

In August 2015, Quality recorded a second notice of sale. It scheduled a sale for December 11, 2015. Quality later postponed the sale to January 15, 2016.

Shortly before the sale, the Malloys filed this lawsuit, alleging violations of the DTA and CPA and seeking an injunction and damages. After the court denied the injunction, the property sold to a third party at the trustee's sale.

In September 2016, the court entered a stipulated order dismissing defendant B of A from the suit.

On March 30, 2016, the court dismissed the claims against Quality on summary judgment.

On December 14, 2016, the court dismissed MERS, Green Tree, and Federal National Mortgage Association (Fannie Mae) under CR 12(b)(6), ruling that the complaint failed "to state a claim . . . upon which relief can be granted."[3] The Malloys appeal.

---

[3] We note the Malloys did not file a response to the defendants' motion to dismiss under CR 12(b)(6). *After* the hearing on the motion, the Malloys filed a proposed order and findings asserting various facts and legal analyses. In its order granting the motion to dismiss, the court expressly considered the Malloys' proposed order and findings. It is not entirely clear whether the court considered the proposed order and findings as timely, substantive argument on the motion

## STANDARDS OF REVIEW

We review a dismissal under CR 12(b)(6) de novo.[4] We assume the truth

of all facts alleged in the complaint and may consider hypothetical facts

supporting the plaintiff's claim.[5]   But if a plaintiff's claim remains legally

insufficient even under hypothetical facts, dismissal pursuant to CR 12(b)(6) is

appropriate.[6]  Dismissal is appropriate "when it appears beyond doubt" that the

plaintiff cannot prove any set of facts that "would justify recovery."[7]

We review a summary judgment order de novo, engaging in the same

inquiry as the trial court.[8] We view the facts and all reasonable inferences from

them in the light most favorable to the nonmoving party.[9]  Summary judgment is

proper if there are no genuine issues of material fact and the moving party is

---

and/or a summary of the Malloys' oral arguments at the hearing, which have not
been transcribed.  Nor is it clear that the court considered the Malloys' earlier
motion for injunctive relief in deciding the motion to dismiss.  Because the court
listed the proposed order as part of the "evidence" it considered and because the
court "considered the pleadings filed in this action," we consider the Malloys'
earlier motion and treat the proposed order as a timely, substantive response to
the motion to dismiss.

[4] Wash. Trucking Ass'ns v. Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393
P.3d 761 (2017), cert. denied, No. 17-145, 2017 WL 3324734 (U.S. Oct. 2,
2017).

[5] Wash. Trucking Ass'ns, 188 Wn.2d at 207.

[6] FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180
Wn.2d 954, 963, 331 P.3d 29 (2014).

[7] San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d
831 (2007).

[8] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

[9] Lybbert, 141 Wn.2d at 34.

entitled to judgment as a matter of law.[10]  Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of fact.[11]

## ANALYSIS

We note first that the Malloys' briefing on appeal does not comply with the Rules of Appellate Procedure.  Despite the clear requirements of RAP 10.3(a)(2) (5), and (6), 10.4(b), and 10.4(f),[12] the Malloys' opening briefs, which total 70 pages, contain only one citation to nearly 400 pages of clerk's papers, provide a table of cases lacking numerous references to page numbers in the briefs, do not identify or apply the correct standard of review for the dismissal under CR 12(b)(6), and exceed the 50-page limit without permission of the court.[13]  These violations significantly hamper our review and are fatal to the appeal.[14]  But even if the Malloys had complied with the rules, their arguments do not warrant relief.

---

[10] Lybbert, 141 Wn.2d at 34.

[11] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

[12] RAP 10.3(a)(5) requires references to the record for each factual statement in a party's statement of the case.  RAP 10.3(a)(6) requires arguments "together with citations to legal authority and references to relevant parts of the record."  RAP 10.4(b) limits opening briefs to 50 pages, and RAP 10.4(f) requires references to both the page and part of the record cited.  RAP 10.3(a)(2) requires "a table of cases . . . with references to the pages of the brief where cited."

[13] Contrary to counsel's assertions, this court did not authorize a "Supplemental Opening Brief" but instead authorized the filing of an *amended* opening brief.

[14] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 819, 828 P.2d 549 (1992) (refusing to consider claims unsupported by references to the record or citation to authority); accord State v. Reeder, 181 Wn. App. 897,

Dismissal under CR 12(b)(6)

Authority To Foreclose. The Malloys first challenge the superior court's

dismissal of their claims against MERS, Green Tree, and Fannie Mae. They

argue that Green Tree lacked authority to appoint Quality as trustee and to direct

the foreclosure because it was not the holder *and* owner of the note. They

acknowledge the Washington Supreme Court's contrary holdings in Brown v.

Department of Commerce[15] and Bain v. Metropolitan Mortgage Group, Inc.[16] that

a foreclosing entity need only be the holder of the note. They claim that those

cases conflict with RCW 62A.9A-203, are wrongly decided, and unconstitutionally

encroach on the legislature's authority. Specifically, they contend "the *security*

*follows the note* doctrine is . . . a *security-follows-the-sale-of-a-note* concept, *not*

a security-follows-the-transfer-of-the-*right-to-enforce-the-note* concept."

But Brown expressly addressed RCW 62A.9A-203 in its decision and held

that the holder of a note can enforce a deed of trust even if the holder is not the

owner.[17] And we must follow the decisions of our state Supreme Court.[18]

---

910 n.15, 330 P.3d 786 (2014); see also Mills v. Park, 67 Wn.2d 717, 721, 409
P.2d 646 (1966) ("We are not required to search the record for applicable
portions thereof in support of the plaintiffs' arguments."); Fishburn v. Pierce
County Planning & Land Servs. Dep't, 161 Wn. App. 452, 468, 250 P.3d 146
(courts will not comb the record to find support for appellant's arguments).
    [15] 184 Wn.2d 509, 524-25, 359 P.3d 771 (2015).
    [16] 175 Wn.2d 83, 104, 285 P.3d 34 (2012).
    [17] Brown, 184 Wn.2d at 540.
    [18] River Stone Holdings NW, LLC v. Lopez, 199 Wn. App. 87, 97, 395
P.3d 1071 (2017) ("We reject Lopez's argument that Brown must yield to what
Lopez believes is an inconsistent statute. The court in Brown expressly

Alternatively, the Malloys contend "the terms of the Note itself, which is a contract, require Green Tree to be both the *holder and owner* of the secured note to be entitled to enforce the DOT that secures it." They support this claim with the following language in the note: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" This language does not purport to govern the authority to foreclose. It does not require a foreclosing entity to be both the owner and holder of the note. Nor does it change who the "holder" is for purposes of the Uniform Commercial Code or who the "beneficiary" is for purposes of the DTA. Under the DTA, the "beneficiary" is "the holder of the instrument or document evidencing the obligations secured by the deed of trust."[19] The "holder" of a note is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."[20]

---

discussed the requirements of RCW 62A.9A-203. Brown, 184 Wn.2d at 528-29. Nevertheless, the court held that a holder of a deed of trust that is not the owner can enforce a deed of trust. Brown, 184 Wn.2d at 540. We are bound to follow Brown.").

[19] RCW 61.24.005(2).

[20] RCW 62A.1-201(b)(21)(A). The Malloys maintain the note was not a "negotiable instrument" due to provisions in the DOT regarding taxes, insurance, maintenance of the property, interest on disbursements, and other charges. They claim these provisions render the amount of the debt uncertain and conditional. This argument fails for several reasons. First, it was not preserved by the Malloys' extremely conclusory argument below in their proposed order and findings. Second, the argument is not supported by citation to authority or the record. Third, though a copy of the note is attached to the Malloys' brief, it is not

Here, the record establishes that Green Tree possessed the note. In its "Declaration of Beneficiary," Green Tree declared it was "the actual holder" of the Malloys' note. The Malloys do not allege otherwise in their complaint.[21] Nor do they allege that the note was not endorsed in blank or payable to Green Tree.

The Malloys also contend possession of the note is insufficient to bestow authority to foreclose "where the actual Owner is known." They assert that '[t]he test of RCW 61.24.030(7)(a) is that where the Owner is known then the Trustee can conduct the foreclosure [on] the security for the Note only when instructed by the Owner of the Note who also holds the Note." They further assert, "If the trustee cannot ascertain who the Owner of the Note is, only then may the trustee

---

a part of the record on appeal. And fourth, the complaint does not allege this theory or any facts supporting it. The Malloys' related claim that the note is not negotiable due to its "negative amortization" is also unsupported and/or unpreserved and is, in any event, contrary to our decision in Bucci v. Nw. Tr. Servs., Inc., 197 Wn. App. 318, 328-32, 387 P.3d 1139 (2016), review denied, 188 Wn.2d 1012 (2017).

[21] Citing RCW 62A.9A-313, the complaint alleges that Green Tree was never the "legal Owner or legal Holder" because Green Tree had only temporary custody of the note and "[t]he legal holder remains the owner even if possession is with another entity." This court rejected the same argument in Trujillo v. Northwest Trustee Services. Inc., 181 Wn. App. 484, 503, 326 P.3d 768 (2014) (RCW 62A.9A-313, which addresses security interests in personal property, "has nothing to do with the nonjudicial foreclosure proceeding . . . . Rather, the security interest underlying the foreclosure proceeding is the lien created by the deed of trust in the real property securing the note that is in the possession of [the defendant]. Thus, UCC § 9-313, which is concerned with security interests in notes, has no bearing on this case."), reversed in part on other grounds, 183 Wn.2d 820, 355 P.3d 1100 (2015).

rely on the 'safe harbor' provided the trustee to rely on a Declaration of the alleged Beneficiary that it holds the Note."

But RCW 61.24.030(7)(a) does not support the Malloys' assertion. It states,

> [F]or residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

Nothing in the statute limits a trustee's authority to rely on a beneficiary's declaration to situations where the note's owner is unknown. To the contrary, in the portion of its opinion addressing this statute, the Brown court concluded that the holder of a promissory note is entitled to enforce it regardless of who owns it[22] or whether the owner is known.[23]

Finally, the Malloys contend Green Tree lacked authority to appoint Quality and to direct the foreclosure because of earlier ineffective assignments of the DOT and note, including an assignment from MERS.[24] But again, as

---

[22] Brown, 184 Wn.2d at 541-44.

[23] See Brown, 184 Wn.2d at 542 n.18.

[24] Respondents argued below that the Malloys lacked standing to challenge the validity of any assignment of the DOT. They do not reassert this argument on appeal. We note that we recently declined to follow federal decisions, including decisions cited by respondents below, finding no standing because they do not apply Washington's test for standing. Bavand v. OneWest Bank, FSB, 196 Wn. App. 813, 385 P.3d 233 (2016).

discussed above, possession of the note in bearer status provides the possessor with power to foreclose and to appoint a trustee. The validity of any prior assignments had no effect on Green Tree's authority to foreclose.[25]

CPA Violations. The Malloys argue alternatively that even if earlier assignments or appointments did not affect the validity of the sale, those actions violated the CPA because they were deceptive. To prevail on a CPA claim, a plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury.[26] The causal link must demonstrate that the alleged injury would not have occurred "but for" the defendant's unlawful acts.[27] An appellate court

---

[25] In re Butler, 512 B.R. 643, 656 (Bankr. W.D. Wash. 2014) (under the DTA, "a security interest follows the obligation it secures," and this is true whether the DOT was assigned properly or at all), aff'd, 550 B.R. 860 (W.D. Wash. 2015); In re Jacobson, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) (holding that "[i]n Washington, only the holder of the obligation secured by the deed of trust is entitled to foreclose. . . . '[T]ransfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter'" (third alteration in original) (quoting Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 275, 21 L. Ed. 313 (1872))); Ukpoma v. U.S. Bank Nat'l Ass'n, 2013 WL 1934172, at *3 (E.D. Wash. May 9, 2013) ("[B]y virtue of being in possession of the note, U.S. Bank is the lawful owner. Its right to receive payment on the note does not depend upon any assignment of the note from MERS.").

[26] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[27] Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d 260, 278, 259 P.3d 129 (2011) (quoting Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 82, 170 P.3d 10 (2007)).

reviews whether a particular action gives rise to a CPA violation as a question of law.[28]

The Malloys' complaint alleges that invalid assignments of the note and DOT, along with violations of foreclosure procedures under the DTA, were unfair or deceptive acts that violated the CPA. The complaint further alleges that these acts caused injuries, including the foreclosure sale and

> injury due to the distractions and loss of time to pursue business and personal activities necessitated by the need to address the wrongful conduct [a]nd due to the need to employ the services of experts in the foreclosure field to determine whether [the] conduct was lawful.

These allegations are insufficient to state a CPA claim.

The Malloys do not dispute that they defaulted on the loan and failed to cure their defaults despite receiving notice of foreclosure. This was the "but for" cause of the foreclosure.[29] Even if true, the allegations in the complaint would

---

[28] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

[29] See Patrick v. Wells Fargo Bank, NA, 196 Wn. App. 398, 410, 385 P.3d 165 (2016), review denied, 187 Wn.2d 1022 (2017); Gelinas v. Bank of Am., N.A., No. 16-1355-RAJ, 2017 WL 1153859, at *5 (W.D. Wash. Mar. 28, 2017) ("Plaintiffs' failure to meet their debt obligation is the 'but for' cause of their purported damages. Therefore, any alleged damages cannot be attributed to MERS."); Babrauskas v. Paramount Equity Mortg., No. C13-0494-RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013) ("Any damage to plaintiff's credit, cloud on his title, or monetary effect of the threat of foreclosure cannot be laid at MERS' door. . . . [P]laintiff's failure to meet his debt obligations is the 'but for' cause of the default [and] foreclosure."); Wear v. Sierra Pac. Mortg. Co., No. C13-535-MJP, 2013 WL 6008498, at *3 (W.D. Wash. Nov. 12, 2013) ("The only injury identified by Plaintiff is the pending foreclosure of his home. . . . Plaintiff does not claim that any action by the Defendants caused or induced Plaintiff to

not establish that the allegedly deceptive acts caused the Malloys' default or failure to cure. Nor would the allegations demonstrate that the allegedly deceptive assignments or appointment caused the Malloys to incur compensable expert or legal expenses. As discussed above, an entity has authority to foreclose because it possesses the note; the invalidity of earlier assignments or appointments does not change that.

These legal principles were well established by Washington case law when the foreclosure in this case occurred. Thus, the only issue the Malloys might theoretically need to investigate would be possession of the note and its bearer status. They do not allege, however, that a deceptive act caused them to incur legal or other expenses to determine who possessed the note. The complaint thus fails to allege facts establishing a "but for" causal connection between the alleged deceptive acts and the Malloys' alleged injuries.[30]

---

default on the loan, or that no party was entitled to foreclose on his property. Therefore, regardless of who the actual beneficiary was that had the right to foreclose on the property, Plaintiff's property would still face foreclosure."); Marts v. U.S. Bank N.A., 166 F. Supp. 3d 1204, 1208-09 (W.D. Wash. 2016) (dismissing CPA claim where plaintiffs failed to show that "but for their alleged confusion regarding who owned their Note, they would have brought their loan current").

[30] See Bavand, 196 Wn. App. at 843, 846 (where possession of note was not in dispute, "authority to enforce the note and deed of trust arose by operation of law" and alleged invalid assignment of a nonexistent beneficial interest in the deed of trust was immaterial; therefore, the court held that "expenses incurred to determine the 'owner' of a promissory note . . . are not compensable under the CPA" and plaintiff failed to demonstrate "but for" causation.). To the extent the Malloys' alleged use of an expert "to determine whether or not Defendants' conduct was lawful" amounted to determining whether the Malloys had a CPA

- 12 -

Fannie Mae.   In the "Underlying Facts" section of one of their opening

briefs, the Malloys provide the following "argument" regarding the dismissal of

Fannie Mae:

> A material question of fact exists as to Fannie Mae's obligation to
> Malloy's [sic] to assure any successors beneficiaries adhere to
> Fannie Mae guidelines mandating good faith modification of the
> Malloy loan by efforts of the beneficiaries in order to act on behalf
> of Fannie Mae if Fannie Mae is in fact the owner of the Note and
> Deed of Trust.   Fannie Mae, if the owner of the Note and Deed of
> Trust was obligated to enforce its guidelines and that they be
> adhered to by the person attempting to enforce the Note and Deed
> of Trust.   Fannie Mae may have breached that obligation to Malloy,
> as the Owner of the Note and Deed of Trust.   Dismissal of Fannie
> Mae was premature and therefore their dismissal should be
> reversed.

In addition to applying the incorrect standard of review for a CR 12(b)(6)

dismissal, the Malloys present this "argument" as underlying facts, not as

argument, and do not support it with any authority.   The argument and authority

the Malloys offer in their reply brief comes too late.[31]   We note, moreover, that

federal courts have uniformly held that "to the extent that the [Fannie Mae]

servicing guidelines can be read as creating enforceable contractual

---

claim, that alleged injury was not compensable under the CPA.   See Panag v.
Farmers Ins. Co. of Wash., 166 Wn.2d 27, 62, 204 P.3d 885 (2009) (consulting
attorney to institute a CPA claim is insufficient to show injury to business or
property and is not compensable under the CPA).   Similarly, the Malloys' claims
of "distractions and loss of time to pursue business and personal activities" also
fail to allege injury to business or property.   Taking time off work is compensable
only when it results in lost business or lost profits.   Panag, 166 Wn.2d at 62;
Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wn. App. 553, 563-64, 825
P.2d 714 (1992).

[31] Cowiche Canyon Conservancy, 118 Wn.2d at 809.

duties, . . . borrowers are neither parties nor third-party beneficiaries entitled to enforce the . . . servicing guidelines."[32]

### Violations of DTA / CR 56 Dismissal of Quality

The complaint also alleges the "[d]efendants" violated the DTA and the CPA by failing to follow the notice procedures for trustee sales set forth in RCW 61.24.030.[33] Respondents correctly point out that while the complaint broadly accuses the "defendants" of these violations, its specific factual allegations about notice failures apply only to Quality. In any event, the court did not err in dismissing the DTA claims.

Under the DTA, the trustee must send the borrower a written notice of default at least 30 days before the trustee schedules a sale.[34] Only then can the trustee record a notice of trustee's sale.[35] The notice of sale must contain the date of the sale.[36] If the sale is not held within 120 days of that date, the trustee must issue a new notice of sale.[37]

---

[32] McKenzie v. Wells Fargo Bank, N.A., 931 F. Supp. 2d 1028, 1044 (N.D. Cal. 2013).

[33] DTA violations may be actionable under the CPA and are governed by the ordinary principles applicable to all CPA claims. Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 432-33, 334 P.3d 529 (2014).

[34] RCW 61.24.030(8).

[35] RCW 61.24.030(8).

[36] RCW 61.24.040(1)(f).

[37] RCW 61.24.040(6); Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 568, 276 P.3d 1277 (2012).

Here, it is undisputed that Quality followed these procedures for the initial sale date. The parties disagree, however, as to whether Quality was required to issue a second notice of default when, after discontinuing the original sale, it issued a second notice of sale. Citing Albice v. Premier Mortgage Services of Washington, Inc.,[38] the Malloys maintain that Quality was required to issue a new notice of default once the 120-day time limit for the first sale expired.

We rejected the same argument in Leahy v. Quality Loan Service Corp. of Washington[39] There, we held that neither Albice nor the plain language of the statutes require a new *notice of default* when a sale is rescheduled after expiration of the 120-day time limit; rather, they simply require a new *notice of trustee's sale*.[40] We explained that the notice of default serves a different purpose than the notice of trustee's sale.[41] The notice of default notifies the debtor of the amount owed and declares a default.[42] By contrast, the notice of trustee's sale notifies the world of the foreclosure sale.[43] "In light of the function served by the notice of default as compared to the notice of trustee's sale, it

---

[38] 174 Wn.2d 560, 276 P.3d 1277 (2012).
[39] 190 Wn. App. 1, 359 P.3d 805 (2015), review denied, 185 Wn.2d 1011 (2016).
[40] Leahy, 190 Wn. App. at 6-7.
[41] Leahy, 190 Wn. App. at 6-7.
[42] Leahy, 190 Wn. App. at 7.
[43] Leahy, 190 Wn. App. at 7.

would not make sense to interpret the act as requiring reissuance of the notice of default."[44]

Despite the centrality of Leahy to this issue, the Malloys' opening briefs only mention it in passing and state in extremely conclusory fashion that its holding does not apply to owner-occupied residential properties.    These arguments are insufficient to present this issue for review.[45]    The additional conclusory argument offered in the Malloys' reply brief adds little and, in any event, comes too late.[46]

To the extent the Malloys claim the alleged DTA violations were either violations of the CPA or supportive of a postsale damages claim for "material violation" of the DTA,[47] their claims fail because, as previously noted, the "but for" cause of their injuries was their default and failure to cure, not any alleged defect in the foreclosure process.    This is particularly true with respect to the alleged

---

[44] Leahy, 190 Wn. App. at 7.  The Malloys also argue that a new notice of default is required whenever a sale is discontinued or terminated, as opposed to postponed.  The Malloys cite no authority for this proposition.  In light of Leahy's discussion regarding the different purposes of the notices, this argument is controlled by Leahy.

[45] Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument." (citing Bohn v. Cody, 119 Wn.2d 357, 368, 832 P.2d 71 (1992))); State v. Rafay, 168 Wn. App. 734, 843, 285 P.3d 83 (2012) (rejecting claim due to absence of meaningful argument or authority to support conclusory claim); Cowiche Canyon Conservancy, 118 Wn.2d at 809 (arguments not supported by authority or analysis need not be considered).

[46] Cowiche Canyon Conservancy, 118 Wn.2d at 809.

[47] See RCW 61.24.127(1)(c).

failure to issue a second notice of default because the Malloys do not deny receiving the original notice of default or the second notice of sale. The latter contained an updated default amount and specified a date by which the default could be cured. The Malloys fail to demonstrate error in the superior court's dismissal of their DTA claims.

Affirmed.

_Leach, J._

WE CONCUR:

_Spearman, J._   _Schindler, J._