# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHADWICK and APRIL FERGUSON, and CARING HANDS PRESCHOOL, | No. 49723-9-II |
| Appellants, | |
| vs. | |
| CORA KRUGER, MARTHA STANDLEY, CHUCK STANDLEY, LEAH CAPILI, ANTONIO CAPILI, CAMMEY ROCCO, RALPH ROCCO, NANCY MANGLONA, ED MANGLONA, JODY HITCHINGS, CHRIS HITCHINGS, LAURA THOMPSON and marital community of, MICHAEL SCHMITT and marital community of, HELANA CODDINGTON, ERIN BELL, JEFFREY BELL, NATASHA SOUDER, ROSE JOHNSTON, YVETTE CLINE, WASHINGTON STATE DEPARTMENT OF EARLY LEARNING, WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | UNPUBLISHED OPINION |
| Defendants, | |
| MARILYN WALSH and JACK WALSH, | |
| Respondents. | |

MAXA, C.J. – April and Chadwick Ferguson appeal the trial court's summary judgment order dismissing their claims against Marilyn and Jack Walsh relating to a lease agreement between the parties for a property the Walshes own. The Fergusons filed a complaint against the

Walshes and several other parties relating to the operation and licensing of the Fergusons'
childcare business on the leased property.

We hold that the trial court did not err in (1) certifying the summary judgment order as
final under CR 54(b) despite the fact that additional claims against other parties remained
unresolved; (2) denying the Fergusons' CR 56(f) motion to continue the Walshes' summary
judgment motion; (3) dismissing on summary judgment the Fergusons' claims for breach of
contract, unjust enrichment, breach of the covenant of quiet enjoyment, constructive eviction,
and civil conspiracy; and (4) awarding the Walshes their reasonable attorney fees under RCW
4.84.185 based on a finding that the Fergusons' claims were frivolous.

Accordingly, we affirm the trial court's summary judgment order dismissing the
Fergusons' claims and the trial court's award of attorney fees to the Walshes. We also award the
Walshes their reasonable attorney fees on appeal for all claims except for unjust enrichment and
civil conspiracy.

FACTS

*Lease Agreement and Termination*

The Walshes own a building in Sequim. Marilyn[1] operated a state-licensed pre-school
and childcare business in the building for 22 years. In 2006, the Walshes leased the building to a
third person. That person vacated the building in 2012, and the Walshes advertised the building
for rent.

In April 2012, the Fergusons agreed to lease the building and signed a lease agreement
with the Walshes. The Fergusons previously had operated a childcare center at another location
and intended to open a new childcare center in the building. The lease stated that the Fergusons

---

[1] We refer to individual parties by their first names to avoid confusion. We intend no disrespect.

wanted to "lease the premises for the purpose of conducting a child day care and preschool." Clerk's Papers (CP) at 388. The lease further stated, "The premises are to be used for the purposes of a child day care and pre-school. Lessee shall restrict its use to such purposes, and shall not use or permit the use of the premises for any other purpose without the written consent of [the Walshes]." CP at 389. But the lease did not expressly warrant that the building was suitable for use as a childcare center.

The lease provided for an initial period of four one-month terms beginning in May, with the lease to automatically renew for a year beginning September 1. The rent was $500 per month during the first four-month period and $1,500 per month thereafter.

In order to begin operations, the Fergusons required business and building licenses. This process included approvals from the Washington Department of Early Learning, the health department, and the fire marshal. Generally it takes at least 90 days to obtain the necessary licenses. In July, the fire marshal unexpectedly required the installation of an automatic fire suppression system before the building could be licensed. Such a system had not previously been required. The Walshes contracted for the system to be installed at their expense.

As part of the fire suppression system, the attic had to be reinsulated. The parties agreed that Chadwick would provide labor at a reduced rate, with the Walshes providing the necessary materials. The Walshes agreed to compensate the Fergusons for this work.

The Fergusons intended to open their childcare center no later than September, and specifically before school started. However, the required building improvements caused a delay in obtaining the necessary licenses. The Fergusons' childcare center opened for business on September 19.

The Fergusons operated a childcare center in the building for almost two and a half years. In February 2015, the Department of Early Learning suspended the Fergusons' childcare license and shut down the business.

Throughout their tenancy, the Fergusons were not current on their rent payments. By March, the Walshes calculated that the Fergusons' arrearages for rent and utilities combined to exceed $9,000. The parties initially attempted to negotiate an alternative payment plan, but the Fergusons did not make the first required payment in March. On March 16, the Walshes served a three-day notice for the Fergusons to pay rent or vacate the premises. The Fergusons vacated the property and were deemed to have abandoned the building and their lease on April 3.

*Lease with Fergusons' Employees*

In 2014, before the Fergusons' license had been revoked, two of the Fergusons' employees, Helena Coddington and Erin Bell, asked the Walshes whether the lease could be transferred if they purchased the business from the Fergusons. The employees did not purchase the business, and there were no additional conversations about leasing until after the Fergusons abandoned the property. However, in April 2016, the Walshes signed a lease for the building with Coddington and Bell.

*Fergusons' Complaint*

In December 2015, the Fergusons filed a complaint in Kitsap County against the Walshes and a variety of other defendants, including Coddington, Bell, and employees of the Department of Early Learning. The complaint stated several causes of action specifically against the Walshes, as well as causes of action against other defendants relating to the Fergusons' license suspension.

After some procedural matters were resolved, the Fergusons filed a timely amended complaint in Clallam County on May 26, 2016. The Fergusons asserted 16 causes of action related to the lease of the childcare center, including that the Walshes breached the lease agreement by failing to have the building suitable for its intended purpose as a childcare center, were unjustly enriched by work the Fergusons did on the property, constructively evicted the Fergusons by requiring unfair amounts of rent and requiring the Fergusons to perform duties not required by contract, and conspired with Coddington and Bell to transfer the business and building to the Fergusons' employees.

*Summary Judgment Order*

The Walshes filed an answer on June 10, and on June 30 filed a motion for summary judgment as to all claims applicable to them. The parties twice continued the summary judgment hearing, ultimately to September 16. The Fergusons then filed a CR 56(f) motion to continue the summary judgment motion, arguing that they had insufficient time to conduct discovery after filing their amended pleading. The Fergusons noted that they had been waiting to begin discovery until the parties' pretrial issues had been resolved, and submitted an affidavit identifying evidence they intended to produce.

The trial court denied the Fergusons' motion to continue the summary judgment motion. The court stated that the Fergusons had not shown a reasonable basis for failing to provide responsive declarations, and had not shown that witnesses were unavailable to provide timely affidavits or declarations. The court added that the information sought by the Fergusons in their proposed discovery would not raise a material issue of fact on any claim against the Walshes.

The trial court granted the Walshes' summary judgment motion. The court ruled that the Fergusons had not presented any evidence that supported any of their claims against the

Walshes.  The trial court also found that the Walshes were entitled to an award of attorney fees and costs under RCW 4.84.185.  The court found that the action considered in its entirety was frivolous, and that the Fergusons' claims against the Walshes were not supported by any rational argument in law or fact.  The court also noted that paragraph 25.1 of the lease agreement provided for an award of attorney fees.  The court awarded the Walshes attorney fees and costs totaling $11,142.75.

The trial court found that there was no just reason for delay in entering judgment dismissing the claims against the Walshes.  The trial court later entered written findings under CR 54(b), allowing for entry of final judgment as to some but not all of the action's parties or claims.[2]  The court found that the Fergusons' claims against the Walshes were almost entirely separate from any claims against the other defendants.  The only cause of action that included other defendants was the allegation of civil conspiracy, but the trial court found there was no evidence to support that allegation.  The court also found,

> 3.  Based upon the record before the Court, . . . the remaining issues before the Court do not involve [the Walshes].  Future action in the case will not change the Court's ruling to dismiss the claims against [the Walshes].  The questions remaining before the trial court do not involve the issues on appeal.
>
> 4.  An appeal by Ferguson of the order dismissing [the Walshes] will not delay the trial of the remaining issues.  The dismissal of [the Walshes] simplified the issues for trial.  Had [the Walshes] not been dismissed, it is likely that the causes of action against them would have been severed and heard in a separate trial.

CP at 5-6.

---

[2] The trial court initially omitted written findings as required by CR 54(b).  A commissioner of this court noted the omission and ruled that if the parties failed to obtain the required findings, the notice of appeal would be converted to a notice of discretionary review.  The parties obtained and filed the trial court's CR 54(b) findings as required.

The Fergusons challenge the trial court's CR 54(b) order and appeal the trial court's order denying their continuance motion, granting the Walshes' summary judgment motion, and awarding attorney fees to the Walshes.

ANALYSIS

A.      CR 54(b) CERTIFICATION

The Fergusons argue that the trial court erred in entering final judgment against the Walshes under CR 54(b). They claim that dismissing the Walshes prejudices their claims of civil conspiracy against the remaining defendants. We disagree.

    1.    Legal Background

An order generally is not appealable as a matter of right until a final judgment has been entered that resolves all claims regarding all parties. *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now*, 119 Wn. App. 665, 693, 82 P.3d 1199 (2004); *see* RAP 2.2(a)(1). However, an appeal may be taken from a judgment that did not resolve all claims if there is "an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay." RAP 2.2(d).

Similarly, CR 54(b) provides that the trial court may direct the entry of a final judgment as to fewer than all claims or parties "only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment." CR 54(b) applies in situations where it could be unjust to delay entry of a judgment on a distinct claim until the entire case had been finally adjudicated. *Gull Indus., Inc. v. State Farm Fire & Cas. Co.*, 181 Wn. App. 463, 480, 326 P.3d 782 (2014).

A final judgment under CR 54(b) is appropriate when there is " '(1) more than one claim for relief or more than one party against whom relief is sought; (2) an express determination that

there is no just reason for delay; (3) written findings supporting the determination that there is no just reason for delay; and (4) an express direction for entry of the judgment.' " *Id.* (quoting *Hulbert v. Port of Everett*, 159 Wn. App. 389, 405-06, 245 P.3d 779 (2011)). Here, the Fergusons contest only the second CR 54(b) factor, whether there was just reason for delay.

To determine whether there is no just reason for delay, the trial court should consider five factors:

> "(1) [T]he relationship between the adjudicated and the unadjudicated claims, (2) whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case, (3) whether it is likely that the need for review may be mooted by future developments in the trial court, (4) whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial, and (5) the practical effects of allowing an immediate appeal."

*Gull Indus.*, 181 Wn. Ap. at 480 (quoting *Hulbert*, 159 Wn. App. at 406).

We review a decision to enter judgment under CR 54(b) for an abuse of discretion. *Gull Indus.*, 181 Wn. Ap. at 481. We give substantial deference to the trial court's judgment to apply CR 54(b). *Nelbro Packing Co. v. Baypack Fisheries, LLC*, 101 Wn. App. 517, 525, 6 P.3d 22 (2000).

2. Analysis

Here, the Fergusons address only the first factor relevant to whether there was no just reason for delay. They argue that the trial court erred in entering final judgment on the civil conspiracy claim against the Walshes because they also have unadjudicated conspiracy claims against Coddington and Bell.

However, even though the Fergusons' civil conspiracy claim against the Walshes may be the same as their claim against Coddington and Bell, judicial economy would not necessarily be best served by delaying this appeal. The Fergusons' lawsuit involves two largely separate

8

factual issues – one relating to the Fergusons' lease, which primarily involves the Walshes, and another involving the Fergusons' licensing, with which the Walshes are not involved. As the trial court found, dismissing the Walshes will simplify the remaining issues for trial and will not delay trial of those issues.

The Fergusons also argue that the other claims against the Walshes are related to the alleged conspiracy. But as addressed below, the Fergusons have not presented evidence to support their claims for constructive eviction or breach of the covenant of quiet enjoyment. And their claim for breach of contract relating to the fire suppression system is not conceivably related to an agreement between the Walshes, Coddington, and Bell. Because those claims are proper for appellate review at this time, judicial economy favors resolving all claims against the Walshes, including the civil conspiracy claim.

Accordingly, we hold that the trial court did not abuse its discretion in certifying its summary judgment order as final under CR 54(b).

B.  CR 56(f) MOTION FOR CONTINUANCE OF SUMMARY JUDGMENT

The Fergusons argue that the trial court erred in denying their motion to continue the Walshes' summary judgment motion. We disagree.

CR 56(f) allows the trial court to order a continuance to allow a party opposing summary judgment to conduct discovery. *Bavand v. OneWest Bank, FSB*, 196 Wn. App. 813, 821-22, 385 P.3d 233 (2016). A trial court may deny a continuance for any of three reasons: " '(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.' " *Id.* at 822 (quoting *Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 556, 9 P.3d 805 (2000)). We review a

trial court's denial of a CR 56(f) motion for a continuance for an abuse of discretion. *Bavand*, 196 Wn. App. at 822.

Regarding the first CR 56(f) element, the trial court found that the Fergusons had "not shown a reasonable basis for not having provided responsive declarations as they suggest they need." CP at 63. The Fergusons claim that they were unable to obtain declarations from key witnesses because the witnesses were defendants or otherwise were unwilling to cooperate. But the Fergusons could have scheduled the depositions of these witnesses. Instead, they conducted no discovery in the six months between when they filed their complaint and when the Walshes filed their summary judgment and conducted no discovery even after the motion was continued for over two months. The Fergusons argue that they could not conduct discovery until all parties had filed answers, but the Fergusons could have compelled the parties to file their answers.

Regarding the second CR 54(b) element, the Fergusons identified evidence that would be established through additional discovery. However, the Fergusons also acknowledged that they had personal knowledge of many of the facts they allege are relevant to their claims.

Regarding the third CR 54(b) element, the evidence that would be established through discovery that the Fergusons identified would not raise a genuine issue of material fact on their claims against the Walshes. On the breach of contract claim, the Fergusons claimed that they knew a person who has knowledge of the property's noncompliance with code requirements. But it is uncontested that the building was noncompliant before the Walshes installed the fire suppression system. The Fergusons did not identify how this additional information would create an issue of fact.

On the unjust enrichment claim, the Fergusons testified that they knew the people who assisted with maintenance work on the property. However, because the Walshes' unrebutted

10

evidence is that they were never contacted about the maintenance issues the Fergusons' identify, to raise an issue of material fact the Fergusons would have to identify how the maintenance was unjust. Even if the Fergusons show what work was completed, they have not demonstrated that they will present evidence that any injustice was done.

On the covenant of quiet enjoyment and constructive eviction claims, the Fergusons have not identified any evidence they intend to introduce.

On the civil conspiracy claim, the Fergusons testified that they knew people who would testify about how Coddington and Bell intended to rent the property, and who would testify about several defendants' intentions to enter into a lease with the Walshes. They also state that they would provide internet records showing that Coddington and Bell intended to lease the building, and they would subpoena Coddington's phone records to show her communications with Walsh. But the Fergusons do not identify how any of this information will demonstrate an unlawful purpose.

Accordingly, we hold that the trial court did not err in denying the Fergusons' CR 56(f) motion to continue on any of their claims.

C.    SUMMARY JUDGMENT ON THE FERGUSONS' CLAIMS

1.    Standard of Review

We review summary judgment orders de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). On summary judgment, we construe all evidence and reasonable inferences in favor of the nonmoving party. *Id.* Summary judgment is appropriate when the record shows "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c); *see Keck*, 184 Wn.2d at 370. A genuine issue of material fact exists if the evidence would be sufficient for a reasonable jury to find in favor of the

11

nonmoving party. *Id.* at 370. "If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

On summary judgment, the moving party has the initial burden to show there is no genuine issue of material fact. *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d 1014 (2014). A moving defendant meets this burden by showing that there is an absence of evidence to support the plaintiff's case. *Id.* Once the moving party has made such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact. *See Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012).

2.  Breach of Contract Claim

The Fergusons argue that the trial court erred in granting summary judgment on their breach of contract claim because the Walshes had a duty to provide premises that met the lease's intended purpose. We disagree.

a.  Legal Background – Contract Interpretation

To demonstrate a breach of contract, the plaintiff must show that (1) the contract imposed a duty on the defendant, (2) the defendant breached that duty, and (3) an economic loss occurred as a result of the breach. *Myers v. Dep't of Soc. & Health Servs.*, 152 Wn. App. 823, 827-28, 218 P.3d 241 (2009). We interpret contracts according to the contracting parties' intent. *Id.* at 828.

We apply an objective manifestation theory of contracts, which attempts to determine the parties' intent based on objective manifestations in the agreement rather than unexpressed subjective intent of the parties. *Pelly v. Panasyuk*, 2 Wn. App. 2d 848, 865, 413 P.3d 619

(2018). Subjective intent is generally irrelevant if intent can be determined from the actual words of the contract. *Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 776, 202 P.3d 960 (2009).

> b. No Breach of Express Duty

The Fergusons appear to argue that the Walshes breached the lease because the building was not suitable for the use stated in the lease – as a child day care and preschool – without the installation of a fire suppression system. They apparently claim that the delay caused by that installation was responsible for the fact that they opened their business on September 19, 2012 rather than earlier in September as they had planned.

The lease agreement did state that the Fergusons intended to use the building as a child day care and preschool, and that the Fergusons were required to limit their use to those purposes unless the Walshes consented. However, the Walshes made no express warranty that the building was immediately suitable for such purposes without the need to comply with the requirements of licensing authorities. The Walshes also made no express guarantee that the Fergusons would be able to obtain all necessary licenses by the beginning of September.[3]

Further, it is undisputed that the fire marshal's requirement that a fire suppression system be installed before he would certify the building was unexpected and had never been required before. The Fergusons do not allege that the Walshes somehow were responsible for any delay. In fact, it is undisputed that the Walshes promptly arranged for the installation at their expense.

The Fergusons also seem to argue that their rent should have been prorated or eliminated during the period of construction. But there is no lease term requiring the Walshes to reduce rent

---

[3] The Walshes represented in the lease that the premises were "in fit condition for use by lessee," but that representation clearly relates to whether the premises were "in a good state of repair and in sanitary condition." CP at 390.

in this situation. The Fergusons allude to the lease provision that requires the Walshes to reduce rent if the premises are partially destroyed. But installation of a fire suppression system does not represent a partial destruction of the premises.

Finally, the Fergusons argue that an issue of fact exists regarding the reason for the lease's reduced rent for the first four months. They claim that the reduced rent could not have related to the installation of the fire suppression system. But the Walshes do not disagree, and instead state that the rent reduction was to give the Fergusons time to obtain the necessary licensing and open the childcare center. And the fact that the rent was reduced for the first four months is not material to whether the Walshes breached the lease agreement.

We hold that the Fergusons failed to present evidence creating a genuine issue of material fact on their claim that the Walshes breached a duty in the lease agreement. Therefore, the trial court did not err in granting summary judgment on the Fergusons' breach of contract claim.

3. Unjust Enrichment Claim

The Fergusons argue that an issue of fact exists regarding whether the Walshes were unjustly enriched by work the Fergusons completed on the property. We disagree.

a. Legal Principles

Unjust enrichment allows a plaintiff to recover the value of a benefit retained by the defendant but without any contractual relationship between the parties. *Bircumshaw v. Wash. State Health Care Auth.*, 194 Wn. App. 176, 205, 380 P.3d 524 (2016). To prove unjust enrichment, the plaintiff must demonstrate that (1) the defendant received a benefit, (2) the benefit was at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit with no payment. *Puget Sound Sec. Patrol, Inc. v. Bates*, 197 Wn. App. 461, 475, 389 P.3d 709 (2017).

A person is unjustly enriched when she profits or enriches herself at the expense of another and does so in a manner contrary to equity. *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 490, 254 P.3d 835 (2011). Therefore, enrichment alone is not enough – it is essential that the enrichment be unjust both under the circumstances and as between the parties to the transaction. *Id.* The mere fact that the defendant has benefitted from the plaintiff does not justify recovery. *Id.* Unjust enrichment applies only if the circumstances make it unjust for the defendant to keep the benefit without compensation. *Id.*

        b.    Analysis

Here, the Fergusons appear to argue that the Walshes were unjustly enriched by work the Fergusons completed to improve the property. The Fergusons submitted affidavits testifying that Chadwick performed work to insulate the building's attic, and that the Walshes did not help maintain the property's parking lot, plumbing, or electrical, resulting in the Fergusons hiring labor or doing work to fix those issues themselves.

Regarding the insulation work, there is no evidence that the Walshes received a benefit at the Fergusons' expense. The Fergusons submitted an invoice for labor and materials on the project to the Walshes, and they do not claim that the Walshes failed to pay the invoice. The only evidence approaching unjust enrichment for the insulation work is the Fergusons' testimony that Chadwick provided his own labor for free, and invoiced the Walshes only for materials and labor provided by others. But the Fergusons' testimony is that they agreed to this arrangement. The Fergusons' agreement to complete work on the property without compensation for their labor does not create an issue of fact on whether the Walshes were unjustly enriched.

Regarding maintenance work on the parking lot, plumbing, and electrical, the Fergusons' evidence is limited to a single statement in their affidavits that the Walshes "would not help" and

that the Fergusons "had to either hire labor and manage that labor or we had to do the labor ourselves." CP at 326. This testimony is conclusory, lacks any specifics about the nature of the problems – how severe they were, how long they lasted, how much it cost to remedy the issues – and is unsupported by any evidence. Conclusory statements of this type are typically insufficient to show an issue of fact. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). And Marilyn's unrebutted declaration statement was that the Walshes completed repairs to the building that they were made aware of and that they never avoided a requested repair.

We hold that the trial court did not err in granting summary judgment on the Fergusons' unjust enrichment claim.

4.  Breach of Covenant of Quiet Enjoyment Claim

The Fergusons argue that the trial court erred in dismissing their claim that the Walshes breached the covenant of quiet enjoyment. We disagree.

The covenant of quiet enjoyment is an implied agreement in every lease that the tenant's possession will not be disturbed by the landlord or another party who has a legal right superior to the tenant. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.30, at 350 (2004). Courts have applied the covenant of quiet enjoyment when a landlord prevents the tenant from gaining possession of the leased property, *Draper Mach. Works, Inc. v. Hagberg*, 34 Wn. App. 483, 486, 663 P.2d 141 (1983), locks out a tenant, *Olin v. Goehler*, 39 Wn. App. 688, 692, 694 P.2d 1129 (1985), or fails to ensure the property is in adequate condition to avoid closure by the government. *Cherberg v. Peoples Nat. Bank of Wash.*, 88 Wn.2d 595, 600, 564 P.2d 1137 (1977).

Here, the Fergusons did not present any evidence that actions by the Walshes breached the covenant of quiet enjoyment. The Fergusons argue that they were harassed, intimidated, and

threatened by the Walshes in order to remove them from the property, but submitted no evidence to support that argument. The uncontested record shows that the Fergusons fell behind on rent payments and that the parties attempted to negotiate a payment plan for the unpaid rent. The Walshes then served a three-day notice for the Fergusons to pay or vacate and the Fergusons abandoned the property. There is no indication that this action was unlawful or violated the lease agreement.

We hold that the trial court did not err in granting summary judgment on the Fergusons' claim for breach of the covenant of quiet enjoyment.

5.    Constructive Eviction Claim

The Fergusons argue that the trial court erred in dismissing their claim that they were constructively evicted by the Walshes. We disagree.

Constructive eviction occurs when a landlord intentionally or injuriously interferes with a tenancy, either by depriving the tenant of beneficial enjoyment of the leased property or materially impairing the tenant's enjoyment. *Old City Hall LLC v. Pierce County AIDS Found.*, 181 Wn. App. 1, 8, 329 P.3d 83 (2014). In the context of a commercial lease, constructive eviction can also occur when the landlord seriously interferes with a tenant's conduct of business on the property. *Id.* at 8-9. If a tenant has been constructively evicted, he or she has no obligation to pay rent if he or she abandons the property. *Id.* at 8.

Here, the Fergusons have not demonstrated that an issue of material fact exists regarding their claim of constructive eviction. The Fergusons do not cite any evidence that shows the Walshes interfered with their tenancy, and nothing in the record shows any type of improper interference. The Walshes' attempt to negotiate a plan for the Fergusons to pay unpaid rent and

the service of a notice to pay or vacate did not constructively evict the Walshes. *Ennis v. Ring*, 56 Wn.2d 465, 472, 341 P.2d 885 (1959).

We hold that the trial court did not err in granting summary judgment on the Fergusons' constructive eviction claim.

6. Civil Conspiracy Claim

The Fergusons argue that the trial court erred in dismissing their civil conspiracy claim, which was based on allegations that Marilyn talked with the Fergusons' employees, Coddington and Bell, about entering into a lease while the Fergusons were still leasing the property. We disagree.

a. Legal Principles

To establish a claim for civil conspiracy, the Fergusons must demonstrate through clear, cogent, and convincing evidence that " '(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.' " *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807 (2008) (quoting *All Star Gas, Inc., of Wash. v. Bechard*, 100 Wn. App. 732, 740, 998 P.2d 367 (2000)).

When addressing on summary judgment a claim for which the standard is clear, cogent, and convincing evidence, we view the evidence in light of the substantive evidentiary burden. *Woody*, 146 Wn. App. at 22. Therefore, we determine whether, viewing the evidence in the light most favorable to the plaintiff, a rational trier of fact could find that the nonmoving party provided clear, cogent, and convincing evidence to support his or her claim. *Id.* To avoid summary judgment, the nonmoving party must present evidence sufficient to establish with

"high probability" the fact at issue. *Portmann v. Herard*, 2 Wn. App. 2d 452, 462-63, 409 P.3d 1199 (2018).

        b.    Analysis

Here, the Fergusons have not presented evidence of either prong of civil conspiracy. First, they have not demonstrated that Marilyn and the employees had an unlawful purpose or engaged in unlawful means. They allege that Marilyn and the employees discussed leasing the property while the Fergusons' tenancy was ongoing, but do not demonstrate how that might be unlawful. A potentially unlawful purpose that could apply is tortious interference with a business expectation. *See Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320, 337, 364 P.3d 129 (2015). But the Fergusons cannot show at least one element of that claim – damage resulting from the interference – because they voluntarily abandoned the property and do not contest the Walshes' notice to pay or vacate. *Id.* at 338.

Second, the Fergusons have not shown any evidence of an agreement between Marilyn and the employees. The only evidence in the record of communication between them is an email from Marilyn to the Fergusons, stating that Coddington had informed Marilyn of problems with the property's plumbing. This evidence does not show a "high probability" that Marilyn and the employees entered into an agreement for an unlawful purpose. *Portmann*, 2 Wn. App. 2d at 463.

Accordingly, we hold that the trial court did not err in granting summary judgment on the Fergusons' civil conspiracy claim.

D.    ATTORNEY FEES IN TRIAL COURT

The Fergusons argue that the trial court erred in awarding the Walshes attorney fees at trial under CR 11 or RCW 4.84.185. We disagree.

Attorney fees are allowed under RCW 4.84.185 if the trial court enters a written finding that the action was frivolous and advanced without reasonable cause. An action is frivolous if it cannot be supported by rational argument on the law or fact. *Hanna v. Margitan*, 193 Wn. App. 596, 612, 373 P.3d 300 (2016). For a court to award attorney fees under RCW 4.84.185, the lawsuit must be frivolous in its entirety. *Skimming v. Boxer*, 119 Wn. App. 748, 756, 82 P.3d 707 (2004). But an action may be frivolous as to some defendants, even if it is not frivolous as to others. *Hanna*, 193 Wn. App. at 612. The purpose of RCW 4.84.185 is to discourage abuse of the legal system, allowing for attorney fees when a party must defend itself against a meritless claim asserted for the purpose of harassment, delay, nuisance, or spite. *Skimming*, 119 Wn. App. at 756. We review a trial court's decision under RCW 4.84.185 for a "clear showing of abuse" of the trial court's discretion. *Hanna*, 193 Wn. App. at 612.

Here, the discussion above demonstrates that the Fergusons' claims have no merit. The trial court reviewed all of the evidence, considered all of the Fergusons' arguments, and ruled that their claims were frivolous. We hold that the trial court did not abuse its discretion in making this determination.

E.    ATTORNEY FEES ON APPEAL

The Walshes request attorney fees on appeal under RAP 18.1(a) and an attorney fee provision in the parties' lease. A party prevailing before this court may seek reasonable attorney fees on appeal when a contract provides for an attorney fee award in the trial court. *First-Citizens Bank & Tr. Co. v. Harrison*, 181 Wn. App. 595, 607, 326 P.3d 808 (2014). The parties' lease provides, "If either party retains an attorney to enforce any provision, covenant or condition of this lease . . . the defaulting party agrees to pay reasonable attorney's fees." CP at 393.

Because the Fergusons' claims for breach of contract, breach of the covenant of quiet enjoyment, and constructive eviction were based on the parties' obligations under the lease, we hold that the Walshes are entitled to recover attorney fees and costs incurred in responding to the Fergusons' appeal on those issues. However, because the Fergusons' unjust enrichment and civil conspiracy claims were not based on the parties' contract, the Walshes are not entitled to attorney fees for time spent responding to those portions of the Fergusons' appeal.

## CONCLUSION

We affirm the trial court's summary judgment order dismissing the Fergusons' claims and the trial court's award of attorney fees to the Walshes. We also award the Walshes their reasonable attorney fees on appeal for all claims except for unjust enrichment and civil conspiracy.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
JOHANSON, J.

_____
SUTTON, J.